[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11674

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 13, 2011
JOHN LEY
CLERK

D.C. Docket No. 4:08-cv-10104-KMM

CAT CHARTER, LLC,
PATRICIA RYAN,
DANIEL RYAN,

Plaintiffs - Appellants,

versus

WALTER SCHURTENBERGER,
MULTIHULL TECHNOLOGIES, INC. (MTI),
a Florida corporation,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 13, 2011)

Before TJOFLAT and BARKETT, Circuit Judges, and STEELE,* District Judge.

---

* Honorable John E. Steele, United States District Judge for the Middle District of Florida, sitting by designation.

TJOFLAT, Circuit Judge:

The Federal Arbitration Act (the "FAA" or the "Act"), 9 U.S.C. § 1 et seq., provides for expedited and limited judicial review of arbitration awards, id. §§ 9–11. Section 10(a) of the Act delineates four grounds that permit a court to vacate an award. The question here is whether arbitrators "exceeded their powers"—thereby justifying vacatur of their award under § 10(a)(4)—when they purportedly failed to provide a "reasoned award" as agreed to by the parties. The district court held that they had and therefore vacated the award. We respectfully disagree and reverse.

I.

This case arises out of a dispute over the construction of a yacht. Daniel and Patricia Ryan are Massachusetts citizens who, in anticipation of retirement and with an eye toward the construction of a vessel, formed a Delaware limited liability corporation, Cat Charter, LLC ("Cat Charter"). The Ryans, through Cat Charter (collectively, the "Plaintiffs"), agreed to pay Mutihull Technologies, Inc. ("MTI"), a Florida business owned solely by Walter Schurtenberger (collectively, the "Defendants"), to construct a vessel to be known as the Magic.[1]

---

[1] Construction began prior to any written agreement between the parties. The parties eventually entered into a contract—one without an explicit price term—on February 4, 2005. We do not belabor the specific details of the failed transaction, because our task here is to

But relations between the parties soured, and the Defendants never delivered the Magic, despite receiving roughly $2 million from the Plaintiffs. As a result, the parties entered into binding arbitration pursuant to their written agreement.[2]

The Plaintiffs filed their initial Statement of Claim with the American Arbitration Association (the "AAA") on October 23, 2008. On April 15, 2009, the Plaintiffs submitted an Amended Statement of Claim,[3] in which they asserted six separate claims against the Defendants: (1) deceptive and unfair trade practices under Fla. Stat. § 501.201 et seq.; (2) rescission; (3) breach of contract; (4) fraud or alternative misrepresentation; (5) breach of fiduciary duty; and (6) civil remedy

---

evaluate the vacatur of the arbitration award, not the underlying merits. For more background on the transaction, see Cat Charter LLC v. Schurtenberger, 691 F. Supp. 2d 1339, 1341 (S.D. Fla. 2010).

[2] The contract agreed to by Cat Charter and MTI provided, in relevant part:

The parties agree that any dispute between themselves arising out of this agreement or the performance thereof shall be settled by binding arbitration according to the rules and procedures of the American Arbitration Association and that proper venue of such arbitration shall be Key West, Florida. Further the parties agree that the substantially prevailing party shall recover the cost of such arbitration and reasonable attorney's fees; the arbitration award may be entered in any court of competent jurisdiction.

[3] There was initially some uncertainty as to the proper parties to the arbitration; the Plaintiff's initial Statement of Claim was asserted solely against MTI, whereas the Amended Statement of Claim included all relevant parties. Neither the Plaintiffs nor the Defendants presently challenge the Panel's authority to adjudicate the issues surrounding the failed construction project as to all parties.

for criminal practices under Florida law.

The Defendants answered on April 30, 2009, denying the Plaintiffs' claims and arguing that the construction of the <u>Magic</u> had proceeded according to the terms of the "cost plus" contract entered into in 2005.[4]  Both the Plaintiffs and the Defendants requested an award of reasonable attorney's fees.

The arbitration proceeded under the Commercial Arbitration Rules of the AAA (the "Arbitration Rules") before a panel of three arbitrators (the "Panel").[5] Pursuant to the Arbitration Rules, the Panel held a preliminary hearing on March 4, 2009.  The next day it issued a Report of Preliminary Hearing and Scheduling Order setting forth the schedule and procedures for the pending arbitration.  In relevant part, the Panel stated, "The form of the award also will be determined by agreement of the parties."[6]  On March 25, 2009, the Defendants' attorney sent a

---

[4]  In essence, this dispute was a swearing match, and its resolution necessarily depended on credibility determinations made by the arbitrators.  We will not evaluate or disturb the factfinding of the arbitrators here.  <u>See</u> <u>Major League Baseball Players Ass'n v. Garvey</u>, 532 U.S. 504, 509, 121 S. Ct. 1724, 1728, 149 L. Ed. 2d 740 (2001) (per curiam) (holding that "[w]hen an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award" (citations and internal quotation marks omitted)).

[5]  The Panel consisted of three qualified, experienced arbitrators, including the then-President of the Florida Bar.

[6]  Parties may contract for more than the default "standard award" in arbitration.  Under Arbitration Rule R-42(b), "[t]he arbitrator need not render a reasoned award unless the parties request such an award in writing <u>prior to the appointment of the arbitrator</u>, or unless the arbitrator determines that a reasoned award is appropriate."  AAA Commercial Arbitration Rule R-42(b)

4

facsimile to the AAA case manager informing her that "the parties have agreed that the panel shall provide a reasoned award and that the panel shall determine who the prevailing party or parties are on the various claims between the parties." The Plaintiffs also reminded the Panel of this agreement in their post-trial brief, stating that "[t]he parties have agreed to ask the panel to issue a 'reasoned award' and determine which party is the 'prevailing party' on all claims."

Following discovery, a five-day hearing, and post-trial briefing, the Panel issued a unanimous arbitration award (the "Award") on December 7, 2009. The Award stated, in pertinent part:

> 1.    On the claim of the Claimants, CAT CHARTER, LLC; DANIEL RYAN; and PATRICIA RYAN (hereinafter collectively "Claimants"), for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), we find that Claimants have proven their claim against Respondents, MULTIHULL TECHNOLOGIES, INC. (hereinafter "MTI"), and WALTER SCHURTENBERGER

---

(emphasis added).

The parties in the present case did not request a reasoned award "prior to the appointment of the arbitrator," because there was no such request prior to the preliminary hearing. Despite this fact, the Defendants contended—and the district court held—that the parties properly modified their agreement to require the Panel to render a reasoned award under Arbitration Rule R-1(a). Rule R-1(a) provides that "[t]he parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator." Id. R-1(a).

Given the deference we accord arbitrators in determining arbitral procedures, we are not entirely convinced that the parties' agreement bound the Panel to deliver a reasoned award. Nevertheless, we will interpret the Panel's indication that "[t]he form of the award also will be determined by agreement of the parties" to be sufficient "consent" within the meaning of Arbitration Rule R-1(a), and assume that the parties validly altered the procedures to require a reasoned award when they subsequently communicated with the Panel.

("SCHURTENBERGER"), by the greater weight of the evidence;

    2.    On the claim of the Claimant, CAT CHARTER, LLC, for breach of contract by Respondent MTI, we find that Claimant, CAT CHARTER, LLC has proven its claim against MTI by the greater weight of the evidence;

    3.    All other claims of the Claimants are hereby denied. All counter-claims of the Respondents, MTI and SCHURTENBERGER, are denied;

    4.    On the claim of the Claimants for entitlement to attorney's fees in this arbitration proceeding and entitlement to an award of arbitration expenses and costs, inclusive of the arbitrators' fees and costs, we find that Claimants are the substantially prevailing parties in this arbitration and are entitled to an award of such fees and costs against the Respondents, MTI and SCHURTENBERGER.

    5.    On the claim of the Respondents for entitlement to attorney's fees and costs in this arbitration, we find that Respondents are not the substantially prevailing parties in this arbitration, and said claim is denied;

    6.    On the claim by Claimants for civil theft which the Arbitrators have denied, the Arbitrators find that Claimants raised a claim that had substantial fact and legal support pursuant to Fla. Stat. § 772.104(3). More specifically, we find that the issues relating to missing resin and the cost of the skiff presented substantial fact issues raised by Claimants, justifying denial of any attorney's fees for Respondents; . . . .

The Panel then ordered the Defendants to "jointly and severally pay" the Plaintiffs more than $2 million in damages, fees, costs, and interest. The Panel also granted the Plaintiffs a first lien on the Magic.

On December 31, 2009, the Plaintiffs filed a motion to confirm the Award

6

in the District Court for the Southern District of Florida.[7] The Plaintiffs attached

to this motion the Award, their Amended Statement of Claim to the Panel, and a

host of other exhibits. They made no mention of the agreement requiring the

Panel to provide a reasoned award, and they presented no argument regarding the

sufficiency of the reasons provided.

The Defendants responded on January 19, 2009, with a motion to vacate the

Award on the ground that the Panel exceeded its authority by failing to issue a

reasoned award as required by the parties' agreement. The Defendants never

complained to the Panel regarding the form of the Award or requested a

modification of the Award after it was delivered; they first raised their concern

over the lack of reasons provided by the Panel in their motion to vacate.[8]

The district court vacated the arbitration award, agreeing with the

---

[7] The district court had jurisdiction under 28 U.S.C. § 1332. While the FAA provides the grounds for vacatur of an arbitration award, it does not serve as an independent ground for jurisdiction in federal courts. See Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 581–82, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254 (2008) ("As for jurisdiction over controversies touching arbitration, the [FAA] does nothing, being something of an anomaly in the field of federal-court jurisdiction in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis." (citations and internal quotation marks omitted)).

We have authority to review the vacatur decision under 9 U.S.C. § 16(a)(1)(E), which allows an appeal to be taken from an order "modifying, correcting, or vacating an award."

[8] The Defendants have not waived any claims through their delay; a party seeking vacatur has three months after the award is filed or delivered in which to serve notice on the adverse party. 9 U.S.C. § 12. We note that the Defendants raised this claim for the first time upon seeking vacatur only to underscore the apparently strategic nature of their behavior.

Defendants that the Panel had exceeded its powers within the meaning of

§ 10(a)(4) by failing to provide a satisfactorily reasoned award.  Cat Charter LLC

v. Schurtenberger, 691 F. Supp. 2d 1339, 1344–45 (S.D. Fla. 2010).  The court

further ruled that remand to the Panel was barred by the operation of the common

law doctrine functus officio.[9]  Id. at 1345.  If this court were to affirm the district

court's order, the parties would be required to begin a new arbitration proceeding

before a new panel in order to settle the controversy surrounding the Magic.  In

other words, the district court determined that the Award was so deficient that it

warranted sending the parties back to square one, ostensibly granting the

Defendants a second bite at the apple because of a perceived technical defect in

the form of the Award.

## II.

## A.

We review the district court's findings of fact for clear error and its

conclusions of law de novo.  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938,

947–48, 115 S. Ct. 1920, 1926, 131 L. Ed. 2d 985 (1995) (holding that a circuit

---

[9]  Because we ultimately reverse the district court's holding that the arbitrators exceeded their powers, we need not reach the question of whether functus officio would bar remand to the original arbitrators.  Nevertheless, we note approvingly that a sister circuit, when faced with a nearly identical factual scenario, deemed the doctrine inapplicable and remand to the original arbitrators appropriate.  See Green v. Ameritech Corp., 200 F.3d 967, 976–78 (6th Cir. 2000).

8

court reviewing a district court's disposition of an arbitration award should apply

"ordinary, not special, standards.").

As the district court recognized, the FAA "'imposes a heavy presumption in favor of confirming arbitration awards'"; therefore, "'a court's confirmation of an arbitration award is usually routine or summary.'" Cat Charter LLC v. Schurtenberger, 692 F. Supp. 2d 1339, 1342 (S.D. Fla. 2010) (quoting Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1288 (11th Cir. 2002)).  But § 10(a) of the FAA provides for vacatur of an arbitration award in four scenarios, one of which is relevant to this case.[10]  A district court may[11] vacate the Award if, by not providing a reasoned award, "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).[12]  Still, this review is

---

[10]  The Supreme Court has made clear that the statutory grounds justifying vacatur found in 9 U.S.C. § 10(a) are exclusive.  Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 578, 128 S. Ct. 1396, 1400, 170 L. Ed. 2d 254 (2008).

[11]  We note that Congress instructed that a court "may make an order vacating the award"—as opposed to "must" or "shall"—in delineating the grounds for vacatur, further emphasizing the deferential nature of our review.  9 U.S.C. § 10(a) (emphasis added).

[12]  Section 10(a)(4) is the most frequent ground upon which awards are vacated.  See Andrew M. Campbell, Annotation, Construction and Application of § 10(a)(4) of Federal Arbitration Act (9 U.S.C. § 10(a)(4)) Providing for Vacating of Arbitration Awards Where Arbitrators Exceed or Imperfectly Execute Powers, 136 A.L.R. Fed. 183, § 2[a], at 219.  As Campbell notes, "the courts have tended to find that the arbitrators did not exceed their powers when the awards in commercial arbitrations . . . have been challenged on the grounds that the form of the awards was improper," as is the case here.  Id. § 2[a], at 222.

9

circumscribed, as arbitrators "do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party." Nat'l Wrecking Co. v. Int'l Bd. of Teamsters, 990 F.2d 957, 960 (7th Cir. 1993).

As the Act makes clear, arbitration is a creature of contract. Parties must agree to arbitrate in the first instance, and may contractually limit or alter the issues to be presented to the arbitrators, the scope of the award, and, as here, the form of the award. The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt Info. Scis., Inc. v. Bd. of Trustees, 489 U.S. 468, 478, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488 (1989). Ultimately, arbitrators derive their powers from the parties' agreement.

We recognize, then, that arbitrators may exceed their power within the meaning of § 10(a)(4) if they fail to comply with mutually agreed-upon contractual provisions in an agreement to arbitrate.[13] Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830 (11th Cir. 1991), provides a prime illustration of this principle. In Szuts, we vacated an award that was handed down by only two arbitrators when the

---

[13] We refer to contractual provisions regarding the scope or form of the arbitration. Parties cannot contract for a heightened standard of review by a federal court or expand the grounds for reversing an arbitration award beyond the statutory grounds provided by the FAA. See Hall Street, 552 U.S. at 578, 128 S. Ct. at 1400.

arbitration agreement in question unambiguously required arbitration before "at least three arbitrators," and the party seeking vacatur had objected on that ground prior to the arbitral award. Id. at 830–32. We based our decision on the uncontroversial notion that the "authority of the arbitrators in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed." Id. at 831 (footnote omitted).

An arbitrator may also exceed her authority by failing to provide an award in the form required by an arbitration agreement.[14] The Ninth Circuit, for example, vacated an arbitration award that failed to provide "findings of fact and conclusions of law" as required by the arbitration agreement there at issue. W. Employers Ins. v. Jefferies & Co., 958 F.2d 258, 260 (9th Cir. 1992). The court determined that because the parties "have a right to arbitration according to the terms for which [they] contracted," the panel exceeded its authority under the FAA by failing to meet its contractual obligations. Id. at 261.

We affirm the contractual nature of arbitration and do not disturb the notion that arbitrators are bound to perform their contractual duties.

---

[14] At least one court has viewed this concept with skepticism, musing that "[i]ndeed, it is very strange to assert that an arbitrator has exceeded his powers by not doing enough." ARCH Dev. Corp. v. Biomet, Inc., No. 02 C 9013, 2003 WL 21697742, at *4 n.4 (N.D. Ill. July 30, 2003). We do not share this view and believe that an arbitrator can, in fact, exceed his powers by "not doing enough."

11

B.

To determine whether the Panel in this case exceeded its powers, then, we must first decipher what constitutes a "reasoned award," a somewhat ambiguous term left undefined by the FAA, the Arbitration Rules, and the parties' contract. As a result, we must rely on common sense and scarce precedent to illuminate this critical term.

Determining whether an award is reasoned first requires some context. Generally, an arbitrator need not explain her decision; thus, in a typical arbitration where no specific form of award is requested, arbitrators may provide a "standard award" and simply announce a result. See United Steelworkers v. Enterprise Wheel & Car Co., 363 U.S. 593, 598, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award."). At the other end of the spectrum, the Arbitration Rules allow parties to request that the arbitrators make "findings of fact and conclusions of law," a relatively exacting standard familiar to the federal courts. See, e.g., ARCH Dev. Corp. v. Biomet, Inc., No. 02 C 9013, 2003 WL 21697742, at *4 (N.D. Ill. July 30, 2003).

Logically, the varying forms of awards may be considered along a "spectrum of increasingly reasoned awards," with a "standard award" requiring the

12

least explanation and "findings of fact and conclusions of law" requiring the most. Id. In this light, therefore, a "reasoned award is something short of findings and conclusions but more than a simple result." Sarofim v. Trust Co. of the W., 440 F.3d 213, 215 n.1 (5th Cir. 2006) (citations and internal quotation marks omitted).

Our recognition of this spectrum, however, is still insufficient to fully evaluate the Award as handed down by the Panel. We thus require further guidance regarding the key term. Webster's defines "reasoned" as "based on or marked by reasoning," and "provided with or marked by the detailed listing or mention of reasons." Webster's Third New Int'l Dictionary: Unabridged 1892 (1993). Relatedly, "reason"—as used in this context—is defined as "an expression or statement offered as an explanation of a belief or assertion or as a justification of an act or procedure." Id. at 1891. Strictly speaking, then, a "reasoned" award is an award that is provided with or marked by the detailed listing or mention of expressions or statements offered as a justification of an act—the "act" here being, of course, the decision of the Panel.

With these considerations in mind, we now turn to the ultimate question of whether the Panel exceeded its authority when it handed down the Award as quoted above.

III.

13

We hold that the Panel's actions survive scrutiny under § 10(a)(4). The Defendants argue that the Panel's statements that the Plaintiffs proved their claims "by the greater weight of the evidence" add no explanatory value to the Award and "work[] no transformative alchemy on what is most certainly a 'bare' or 'standard' award." Appellee's Answer Br. 15–16.

The context of the Panel's statements and the fact that the Award provides detailed reasons regarding one claim, however, lead us to disagree with the Defendants. Put simply, the controversy here turned primarily upon credibility determinations made by the Panel. Either the transaction proceeded along the lines of a duly executed contract—the Defendants' story—or the transaction surrounding construction of the Magic was punctuated by misrepresentations and dubious behavior on the Defendants' part—the Plaintiffs' story. The statement that "[o]n the claim of the Claimants . . . for breach of contract . . . we find that Claimant . . . has proven its claim against MTI by the greater weight of the evidence" is easily understood to mean that, in the swearing match between the Plaintiffs and the Defendants, the Panel found the Plaintiffs' witnesses to be more credible. We certainly cannot say that this statement is devoid of any statements offered as a justification; the reason for the Plaintiffs' victory is plainly provided.

To be sure, the Panel could have provided more. But again, had the parties wished for a greater explanation, they could have requested that the Panel provide findings of fact and conclusions of law;[15] to this court, the statement quoted above is greater than what is required in a "standard award," and that is all we need decide.

Further, the Panel provided a detailed explanation for the only conclusion that truly required it—the determination of the prevailing party for each claim and the concomitant award of attorney's fees. The Panel rejected the Plaintiffs' claim for civil theft, but nonetheless declined to award the Defendants attorney's fees on that claim, even though they would appear to be the substantially prevailing party. To clarify, the Panel wrote that the Plaintiffs "raised a claim that had substantial fact and legal support" and that, "[m]ore specifically, we find the issues relating to missing resin and the cost of the skiff presented substantial fact issues raised by Claimants, justifying denial of any attorney's fees for" the Defendants. These

---

[15] Indeed, prior to their request for a reasoned award, the parties contemplated requesting a more detailed opinion from the Panel. In an email exchange, an attorney for the Defendants stated a preference for "an award including findings of fact and conclusions of law." Notably, in response, an attorney for the Plaintiffs explained, "I don't want to ask them to do voluminous findings, I think a paragraph would be sufficient and more consistent with the nature of arbitration."

This exchange reveals that the parties knew full well that they could request the Panel to produce "findings of fact and conclusions of law" but consciously opted for a less-demanding standard.

statements clearly provide more than a simple result, and give ample justification

for the decision of the Panel.  In short, the Award was a reasoned one.[16]

Our conclusion today holds consistent with the general review principles

embodied in the FAA.  The Supreme Court has read §§ 9–11 of the FAA

> as substantiating a national policy favoring arbitration with just the
> limited review needed to maintain arbitration's essential virtue of
> resolving disputes straightaway.  Any other reading opens the door to
> the full-bore legal and evidentiary appeals that can render informal
> arbitration merely a prelude to a more cumbersome and time-
> consuming judicial review process, and bring arbitration theory to
> grief in post-arbitration process.

Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 588, 128 S. Ct. 1396, 1405,

170 L. Ed. 2d 254 (2008) (citations and internal quotation marks omitted).

IV.

In the present case, three validly-appointed arbitrators oversaw a five-day

hearing and rendered a thoughtful, reasoned award.  We decline to narrowly

interpret what constitutes a reasoned award to overturn an otherwise apparently

---

[16] Our holding comports with the sparse precedent that specifically addresses this issue. Compare Green v. Ameritech Corp., 200 F.3d 967, 970, 974–76 (6th Cir. 2000) (reversing a district court's vacatur order and confirming an arbitration award challenged on the ground that it failed to provide reasons when the arbitration agreement required an explanation with respect to each theory advanced), with Vold v. Broin & Assocs., Inc., 699 N.W.2d 482, 484–85 (S.D. 2005) (affirming a lower court's vacatur order where an arbitrator provided "no reason for each award and no reason for rejecting [a party's] claims" and "did not mention any of the relevant contract provisions at issue, cite any law, or discuss any of the evidence" despite being required to provide a reasoned award).

seamless proceeding. The parties received precisely what they bargained for—a speedy, fair resolution[17] of a discrete controversy by an impartial panel of arbitrators skilled in the relevant areas of the law. To vacate the Award and remand for an entirely new proceeding would insufficiently respect the value of arbitration and inject the courts further into the arbitration process than Congress has mandated. As such, the Award should be confirmed and this controversy should be put to rest once and for all.

For the foregoing reasons, the ruling of the district court is REVERSED and REMANDED for reinstatement of the Award.

SO ORDERED.

---

[17] As this court has previously explained, "[i]n applying the statutory grounds for the granting of a motion to vacate an award, we must always bear in mind that the basic policy of conducting arbitration proceedings is to offer a means of deciding disputes expeditiously and with lower costs than in ordinary litigation." Schmidt v. Finberg, 942 F.2d 1571, 1573 (11th Cir. 1991) (citations omitted).