[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-13298

Non-Argument Calendar

_____

JOHN NELSON PATRICK MCEACHERN,
BLUE DEALER SERVICES, INC.,

Plaintiffs-Appellants,

*versus*

E.R.J. INSURANCE GROUP, INC.,
d.b.a. American Heritage Insurance Services,
PABLO CREEK SERVICES, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:22-cv-00023-BJD-JRK

_____

Before JORDAN, LUCK, and MARCUS, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants John McEachern and Blue Dealer Services, Inc. ("Blue Dealer Inc.") (collectively, "Plaintiffs") appeal from the district court's order vacating an arbitral award of $3,494,401.17 in their favor and against Defendants-Appellees E.R.J. Insurance Group, Inc. and Pablo Creek Services, Inc. (collectively, "Allstate"). The dispute arose out of a contract the parties entered into about commission payments Allstate allegedly owed to Blue Dealer Inc. The district court vacated the arbitral award on two grounds -- first, because the arbitration occurred while Plaintiffs' motion to compel arbitration was pending in the district court, and, second, because the arbitration was not carried out in accordance with the contract's arbitration procedural requirements. On appeal, Plaintiffs seek to overturn the vacatur of the arbitral award because: (1) Allstate was notified of, but refused to participate in the arbitration; and (2) the parties delegated the issue of arbitrability to the arbitrators. After careful review, we affirm.

I.

John McEachern is the sole shareholder, officer, and director of Blue Dealer Inc. On April 30, 1013, McEachern signed "Agent

Agreements" with Allstate. The agreements "authorized [Blue Dealer Inc.] to offer automotive aftermarket programs or products . . . to certain lenders, lessors, dealers and credit unions." The Agent Agreements contain identical arbitration provisions which read in full:

> ARBITRATION. Any dispute arising in respect of the terms, conditions or effects of this Agreement shall be settled by arbitration as the sole remedy available to both Parties hereto. In the event of any such dispute, either Party hereto may make a written demand for arbitration. Upon such demand, each Party hereto shall select an arbitrator. The two arbitrators will then select a third arbitrator. If the two cannot agree upon a third arbitrator within thirty (30) days following the appointment of the second arbitrator, each arbitrator shall name a candidate for the third arbitrator and the third arbitrator shall be selected by drawing lots between such candidates. If either Party fails to select an arbitrator within thirty (30) days following the written demand for arbitration, the demanding Party may select both arbitrators and such arbitrators shall select the third arbitrator as aforesaid. Each Party shall present its case to the three arbitrators within sixty (60) days following appointment of the third arbitrator, unless the arbitrators permit otherwise. The arbitrators shall render their decision as to the dispute within ninety (90) days following such presentations, unless the Parties hereto mutually agree otherwise. A decision agreed to by two of the arbitrators will be final and binding upon both Parties

hereto. Each Party shall pay the expense of the arbitrator it selected and the Parties hereto shall bear the expenses of the third arbitrator equally. In the event the two arbitrators are chosen by the demanding Party as provided above, the two Parties shall bear the total combined expense of all arbitrators equally. Arbitration shall take place in Jacksonville, Florida, or such other places as the Parties hereto may mutually agree upon. The commercial arbitration rules of the American Arbitration Association ["AAA"] will apply.

The Agent Agreements also contained almost identical assignment clauses which prohibited the assignment or transfer of "any right under this Agreement . . . without the written consent of [Allstate]."

After the Agent Agreements were executed, McEachern formed a separate entity with non-party Joe Sellers named Blue Dealer Service, LLC ("Blue Dealer LLC"). The Operating Agreement for Blue Dealer LLC provided that as of January 1, 2014, McEachern would "cause [Blue Dealer Inc.], to cease doing business and all of the contracts, acceptable to [Blue Dealer LLC], shall be assigned to [Blue Dealer LLC]."

Then, on November 7, 2017, Sellers and McEachern entered into a written agreement to close Blue Dealer LLC. Sellers then formed International Automotive Dealers II, LLC ("IAD LLC") on November 13, 2017. According to Allstate, certain customer accounts held by Blue Dealer LLC were transferred to IAD LLC,

including an Agent Agreement that IAD LLC executed with Allstate on November 13, 2017.

Nearly three years later, on June 17, 2020, McEachern and Blue Dealer Inc. issued an arbitration demand to Allstate pursuant to the Agent Agreements. Plaintiffs alleged that Allstate fraudulently paid IAD LLC commissions that Blue Dealer Inc. was entitled to receive. The demand said that Plaintiffs had selected Ken Barnes of the Barnes Law Firm in Kansas City, Missouri as an arbitrator. Allstate contested the validity of the demand via letter on July 15, 2020, arguing that McEachern and Blue Dealer Inc. were not parties to the Agent Agreements because those rights had been assigned to Blue Dealer LLC and they therefore had no right to demand arbitration. Allstate further noted that if a decision-maker later found arbitration to be proper, it objected to the selection of Barnes because he did not meet the requirements set forth in the AAA's commercial rules, which were incorporated into the Agent Agreements. Allstate also notified the parties that if arbitration should go forward, it had selected John A. DeVault, III of the Bedell Firm in Jacksonville, Florida to be its arbitrator.

On July 16, 2020, Barnes contacted DeVault and proposed naming Henry Service of the Service Law Office in Kansas City, Missouri as the third arbitrator. About two weeks later, Allstate filed a complaint for declaratory judgment relief against McEachern and Blue Dealer Inc. in the United States District Court

for the Middle District of Florida (the "Former Action").[1] Allstate sought a "declaratory judgment finding that [McEachern and Blue Dealer Inc.] have no right or ability to demand arbitration pursuant to the April 30, 2013 Agent Agreements between [Allstate] and [Blue Dealer Inc.]." Allstate sought both a preliminary injunction and moved for a temporary restraining order to enjoin Blue Dealer Inc. "from initiating or conducting arbitration pursuant to their Demand for Arbitration."

On August 12, 2020, the district court denied Allstate's motion for a temporary restraining order and took Allstate's motion for a preliminary injunction under advisement. The next day, DeVault -- the arbitrator nominated by Allstate -- responded to Barnes' letter nominating Service as the third arbitrator. He objected to Service's nomination on the grounds that Service, like Barnes, was not an AAA approved arbitrator as required by the Agent Agreements. Instead, he proposed nominating Terrence M. White, of Upchurch, Watson, White and Max in Ormond Beach, Florida as the third arbitrator, should the arbitration go forward. Barnes responded on August 14, 2020, and proposed "drawing lots between" Service and White on September 11, 2020, via Zoom.

---

[1] The instant case was predated by the earlier case, *E.R.J. Ins. Grp. v. McEachern*, No. 3:20-cv-847-BJD-JRK ("Former Action"), filed by Allstate and involving the same parties as in the instant case. We can take judicial notice of the earlier "complaint, which is publicly available, to establish the content of those allegations." *Cho on behalf of States v. Surgery Partners, Inc.*, 30 F.4th 1035, 1044 (11th Cir. 2022).

On August 17, 2020, McEachern and Blue Dealer Inc. filed a motion to compel arbitration in the district court in the Former Action. The district court denied Allstate's motion for a preliminary injunction on September 1, 2020, finding that Allstate failed to demonstrate a threat of irreparable harm. The district court took under advisement Plaintiffs' motion to compel arbitration.

On September 4, 2020, Allstate's attorney contacted Plaintiffs' attorney and reiterated Allstate's objection that Barnes and Service were ineligible to serve as arbitrators. On September 10, 2020, Plaintiffs emailed the case manager for White -- the second arbitrator Allstate had nominated -- about the Zoom lot drawing. Because the case manager was unfamiliar with the dispute, she responded by saying that White was not conducting any arbitrations and asking who had selected White as an arbitrator. She realized she was mistaken on September 18, 2020, and wrote to confirm that White had spoken with Barnes about serving as an arbitrator, but that the planned dates did not work for White.

Meanwhile, on September 10, 2020, Barnes reached out to DeVault and told him that because White was unwilling to serve as a third arbitrator, Service would serve as the third arbitrator as default and there would be no coin flip. DeVault responded and reiterated that it was Allstate's position that neither Barnes nor Service was eligible to conduct the arbitration and that the parties should wait to proceed until the district court ruled on the motion to compel arbitration. DeVault further explained that if the court found that arbitration was proper, Barnes's proposed method for

selecting the third arbitrator did not conform with the "drawing lots" procedure laid out in the Agent Agreements.

Despite these objections, Barnes and Service proceeded with the arbitration, which took place on October 20–21, 2020. Allstate continued to object to the eligibility of Barnes and Service as arbitrators and refused to participate in the arbitration. The resulting arbitration panel was therefore composed of only Barnes and Service, both chosen by Plaintiffs. The two arbitrators recognized that the "agreement specified three arbitrators to adjudicate this controversy" but found that they had authority to adjudicate anyway because "pursuant to AAA Rule 44(a) a simple majority of a panel is needed to reach an award," and "the remaining members of this panel make this award unanimously."

The two arbitrators awarded Plaintiffs $3,494,401.17 against Allstate. On January 25, 2021, McEachern and Blue Dealer Inc. filed a motion to confirm the arbitral award and dismiss Allstate's initial complaint in the Former Action. Thereafter, the district court entered an order denying as moot McEachern and Blue Dealer Inc.'s motion to compel arbitration since they had already conducted and obtained an arbitral award. On August 6, 2021, the district court entered an order directing the parties to brief whether the court had authority to decide the then-pending issues involving the confirmation of the arbitral award, the vacatur the arbitral award, and summary judgment.

While these issues were pending in the district court, on October 11, 2022, McEachern and Blue Dealer Inc. filed a *new* action -

23-13298                Opinion of the Court                9

- *McEachern et al v. E.R.J. Insurance Group et al.*, No. 3:22-cv-00023-BJD-JRK (the "Instant Action") in the Middle District of Florida -- and then filed another motion to confirm the arbitral award, this time in the new action. On October 25, 2022, Allstate responded to Plaintiffs' motion to confirm the arbitral award and moved, in the new action, to vacate the award.

On September 26, 2022, the district court entered an order finding that Allstate's request for declaratory relief in the Former Action was moot, dismissing the Former Action, and holding that the issues then pending in that case were "better suited to be considered in [the Instant Action]." On July 24, 2023, the magistrate judge in the Instant Action issued a Report and Recommendation ("R&R") recommending that the district court deny Plaintiffs' motion to confirm the arbitral award and grant Allstate's motion to vacate the award. The R&R recommended vacating the award on two grounds: (1) because the arbitration occurred while the motion to compel arbitration was still pending in the Former Action; and (2) because the arbitrators were selected in a manner contrary to the Agent Agreements. Over Plaintiffs' objections, the district court adopted the R&R's recommendations, and vacated the arbitral award.

This timely appeal follows.

II.

We review the district court's findings of fact for clear error and its conclusions of law *de novo*. *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 842 (11th Cir. 2011). The Federal Arbitration Act

("FAA") "imposes strict procedural requirements on parties seeking to vacate arbitration awards." *Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1299 (11th Cir. 2015). But there are four scenarios in which the FAA provides for vacatur of an arbitral award. 9 U.S.C. § 10(a). Relevant here, a district court may vacate an arbitral award if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* § 10(a)(4).

Arbitration is a matter of contract. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989). "Ultimately, arbitrators derive their powers from the parties' agreement." *Cat Charter*, 646 F.3d at 843. Therefore, "[t]he power and authority of the arbitrators in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed." *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir. 1991). Indeed, the FAA expressly provides that where a method for appointment is set out in the arbitration agreement, the agreed-upon method "shall be followed." 9 U.S.C. § 5.

We have found that arbitrators have exceeded their powers when the agreed-upon manner of arbitrator appointment was not followed. So, for example, in *Szuts*, we vacated an award that was handed down by only two arbitrators when the governing arbitration agreement unambiguously required arbitration before "at

least three arbitrators," and the party seeking vacatur had objected to the arbitrators before they entered an arbitral award. 931 F.2d 830–32. Similarly, in *Sam Kane Packing Co. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO*, 477 F.2d 1128 (5th Cir. 1973),[2] the Former Fifth Circuit, in binding precedent, vacated an arbitral award that was entered unilaterally where the contract provided that each party was to appoint an arbitrator. *Id.* at 1135–36. In *Sam Kane*, as here, both parties nominated arbitrators, but one party and its arbitrator refused to participate in the arbitration, arguing that the dispute was not arbitrable. *Id.* The other proceeded to arbitration alone and won an award against the other. *Id.* at 1131. The Court determined that "[t]he result must turn on whether or not this contract can be construed to allow single party arbitration where one party appoints [a] representative as called for by the contract but that representative refuses to proceed with the selection of a neutral [arbitrator]." *Id.* at 1135–36. It found "no contractual grounds" to permit single-party arbitration and vacated the award. *Id.*

In this case, the manner in which the arbitrators were appointed utterly failed to comply with the terms of the Agent Agreements. The agreements expressly provided that: (1) "each Party . . . shall select an arbitrator"; (2) "[t]he two arbitrators will then select a third arbitrator," but "[i]f the two cannot agree upon a third

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

arbitrator . . . each arbitrator shall name a candidate for the third arbitrator and the third arbitrator shall be selected by drawing lots"; and (3) "[e]ach Party shall present its case to the three arbitrators within sixty (60) days following appointment of the third arbitrator, unless the Parties . . . mutually agree otherwise." Only if "either Party fails to select an arbitrator," could the other party "select both arbitrators and such arbitrators shall select the third arbitrator."

Plaintiffs claim that based on these provisions, they could unilaterally select two arbitrators and conduct the arbitration before those two alone. But there is no contractual basis for Plaintiffs to unilaterally select two arbitrators and conduct the arbitration before those two alone. This is especially true since Allstate -- which had selected its own two arbitrators -- raised objections immediately when Plaintiffs selected its first arbitrator. By ignoring Allstate's objections and holding their own arbitration before two arbitrators in a manner not permitted by the Agent Agreements, Plaintiffs' arbitrators clearly exceeded their powers.

Plaintiffs first say that the contract allows for arbitration to occur before its two unilaterally chosen arbitrators because Allstate's arbitrator, DeVault, refused to participate in selecting a third arbitrator. They claim that "this solution did not 'contradict[] the express language of the [arbitration] agreement'" because "the arbitration clause is silent on how to proceed if one of the arbitrators refuses to participate in the drawing of lots or to nominate a third arbitrator willing to serve." But, notably, DeVault *did* select a third arbitrator who was willing to serve, White. Any confusion that

arose due to White's case manager's email -- concerning whether White was willing to serve as an arbitrator -- was cleared up within eight days and over a month before the arbitration actually took place. Further, even assuming DeVault failed to select a third arbitrator, the arbitration agreement is explicit that "[e]ach Party shall present its case to the three arbitrators," "unless the arbitrators permit otherwise." In the face of DeVault's repeated objections, Plaintiffs' unilateral decision to hold the arbitration before only their two arbitrators -- Barnes and Service -- was an express conflict with the language of the arbitration agreement.

Plaintiffs also argue that "the arbitration clause contemplated the arbitration *would* move forward even if one of the parties refused to participate" and that proceeding with only two arbitrators was "consistent with th[e] [contract] language and the parties' intent." They cite this clause: "[i]f either Party fails to select an arbitrator within thirty (30) days following the written demand for arbitration, the demanding Party may select both arbitrators and such arbitrators shall select the third arbitrator as aforesaid." But this clause only applies if either party fails to select their *initial* arbitrator. It does not apply here, even if we assume White was unwilling to serve as an arbitrator, because Allstate had in fact selected its initial arbitrator, DeVault. Further, this provision makes clear that the parties anticipated that any arbitration would occur before a "third arbitrator as aforesaid," not merely two. This clause actually underscores the parties' intent to arbitrate before three arbitrators.

Plaintiffs add that they acted consistently with the arbitration agreement because there is a "fifty percent . . . probability" that the composition of the panel would have been the same had DeVault participated in drawing lots. And that "Allstate had agreed to allow two arbitrators to decide the substantive issue" because "[t]he arbitration agreement unambiguously states: 'A decision agreed to by *two* of the arbitrators will be final and binding upon the Parties hereto.'" But we've already rejected this argument. In *Szuts*, we held that "[t]he going forward of two arbitrators violated the provision of the arbitration agreement that 'any arbitration shall be before at least three arbitrators'" "despite the fact that the agreement authorizes the majority to render an award." 931 F.2d at 831 & n.3 (cleaned up). This is because, "even if a majority of an arbitration panel has the authority to render a valid award, they can do so only after *all* arbitrators have heard the evidence and have had the opportunity to consult with each other on the outcome of the arbitration." *Id*. (emphasis added).

Plaintiffs suggest that proceeding with its two arbitrators was the only solution to Allstate's refusal to conduct arbitration with Barnes and Service. But Plaintiffs ignore the obvious solution: if Allstate was stonewalling all arbitration attempts, then Plaintiffs simply should have waited for the district court to rule on their pending motion to compel arbitration. *See Sam Kane*, 477 F.2d at 1136 (holding that a party that unilaterally selected arbitrators "should have sought an order from the district court compelling [the stonewalling party] to follow the contractually agreed to procedures" and "[s]ince there was a readily available alternative (a

counterclaim for compulsion to arbitration) available . . . , we do not approve the unilateral arbitration"). We can find nothing to support Plaintiffs' decision to pursue the unilateral approach it took -- an approach that was not permitted under the language of the Agent Agreements or the case law -- instead of waiting for an order from the district court, on a motion they had already filed in that court.

Finally, Plaintiffs argue that Allstate waived its objections to the arbitration. They cite several out-of-Circuit cases which found that a party seeking to void an arbitral award had waived its objections to the composition of the arbitration panel, but these cases are nonbinding on us, and, in any event, they are inapposite. They all dealt with situations where a party failed to clearly object to the arbitration panel members prior to the arbitral award. *See Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 671–74 (5th Cir. 2002) (holding that objections to an arbitrator were waived when the party participated in an eight-day arbitration hearing with the arbitrator and raised no objections at the hearing, even when asked); *Marino v. Writers Guild of Am., E., Inc.*, 992 F.2d 1480, 1484 (9th Cir. 1993) ("[A] party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse."); *accord Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 729 (5th Cir. 1987); *Own Cap., L.L.C. v. Johnny's Enters., Inc.*, No. 11-12772, 2011 WL 2560334, at *5 (E.D. Mich. June 28, 2011) (unpublished); *Alim v. KBR, Inc.*, No. 3:11-CV-1746-N, 2013 WL 12084291, at *2 (N.D. Tex. Sept. 11, 2013) (unpublished).

Allstate clearly and repeatedly objected at virtually every critical point to the composition of the arbitration panel. Indeed, *at least eight times prior to the arbitral award*, Allstate disputed the respective appointments of Barnes and Service -- objecting to their eligibility and to Plaintiffs' attempts to "[u]nilaterally establish the members of the 'arbitration panel'" -- and requested that the parties wait to arbitrate until after the district court ruled on the motion to compel arbitration. This simply was not a situation where Allstate sat idle throughout the arbitration process, thereby waiving its objections.

Accordingly, the district court did not err in denying Plaintiffs' motion to confirm the arbitral award or in granting Allstate's motion to vacate the arbitral award. Because we can affirm on this ground alone, we need not address any of the parties' remaining arguments.

**AFFIRMED.**