

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00712-CV

**SSP HOLDINGS LIMITED PARTNERSHIP**
d/b/a Circle K and Stripes LLC, successor by merger to SSP Partners,
a Texas General Partnership,
Appellant

v.

Yolanda **LOPEZ** and Jesus Lopez,
Appellees

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2004-CVT-00-1507-D1
The Honorable Joe Lopez, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
    Patricia O. Alvarez, Justice
    Luz Elena D. Chapa, Justice

Delivered and Filed:  April 30, 2014

REVERSED AND REMANDED

There have been two arbitration proceedings arising from the underlying lawsuit.  This accelerated appeal is from the trial court's order vacating an arbitration panel's final decision in favor of appellants in the second proceeding.[1]  In its order, the trial court found that the final decision was procured by undue means, the arbitrators engaged in misbehavior, and the arbitrators

---

[1] There is no dispute that this arbitration proceeding is governed by the Federal Arbitration Act (the "FAA").

exceeded their powers. On appeal, appellants challenge all three grounds for the trial court's order. We reverse the trial court's order vacating the arbitration decision, remand the cause, and order the trial court to confirm the arbitration decision.

## BACKGROUND

Yolanda Lopez and her husband sued SSP Holdings Limited Partnership ("SSPH-LP") for personal injuries Yolanda allegedly suffered in the course and scope of her employment. The trial court ordered Yolanda to initiate arbitration proceedings on her claims against the company, but stayed her husband's loss of consortium claim. In the first arbitration proceeding, SSPH-LP moved for summary judgment on the grounds that Yolanda's negligence and premises liability claims were time-barred under the terms of the parties' arbitration agreement. In a February 12, 2008, order, arbitrator Lynne Gomez denied the motion for summary judgment concluding the applicable limitations period may have been tolled. SSPH-LP moved for reconsideration, and Yolanda responded.

On March 17, 2008, Gomez signed an order granting the motion for reconsideration and the motion for summary judgment. In this order, Gomez noted Yolanda was not arguing the limitations period was tolled, but instead, she argued her claim was not time-barred. Gomez disagreed with Yolanda's arguments, concluded Yolanda did not initiate arbitration until almost five years after her injury occurred, and therefore, her claim was not timely filed in accordance with the parties' agreed arbitration procedure. Yolanda appealed. In an April 9, 2010, final decision, the arbitration appeals panel determined Yolanda's claims were barred by the statute of limitations. The trial court denied Yolanda's motion to vacate the arbitration panel's final decision, and, on October 12, 2010, confirmed the final decision, and dismissed Yolanda's claims and causes of action "with prejudice to their re-filing, in whole or in part." The court did not dismiss Yolanda's husband's claim.

After the first arbitration, Yolanda and her husband amended their suit to add Stripes LLC[2] as a defendant, and Yolanda rejoined the lawsuit. Stripes filed an application for an order for arbitration, which the trial court granted. In its March 1, 2012, order, the trial court ordered that Stripes "may initiate proceedings with the American Arbitration Association by filing the appropriate demand and other notices . . . ." The order also stated that Stripes' failure to timely initiate arbitration proceedings "SHALL result in denial of [Stripes' application], and the resumption of all proceedings before this Court."

Stripes served its demand for the second arbitration in which it described its claim as follows:

> Stripes LLC seeks no affirmative relief whatsoever in this arbitration but only a declaration under the Texas Uniform Declaratory Judgment Act . . . that it is not liable to Respondent, Mrs. Lopez on any claims she has asserted or may assert against it based on her alleged October 18, 2002 on-the-job injury. . . . Stripes LLC seeks only a declaration that it is not liable to Mrs. Lopez on any claims against it because (1) such claims are barred by the applicable statute of limitations (the Texas two-year statute of limitations in Section 16.003(a) of the Texas Civil Practice and Remedies Code); (2) such claims are barred by res judicata and collateral estoppel from the April 9, 2010 Final Award On Appeal . . . and the October 12, 2010 Order Confirming Arbitration Award[;] and (3) such claims are barred because Claimant Stripes LLC is the successor in interest to SSP Holdings Limited Partnership, as admitted in Paragraph 6 of Exhibit A. Stripes LLC is not seeking any attorney's fees, costs or expenses, or any other form of affirmative relief.

In the arbitration proceeding, Stripes again moved for summary judgment and requested a declaratory judgment on its claims as described above.[3] The hearing arbitrator denied the motion

---

[2] Apparently, SSPH-LP was the wrong entity to sue because Yolanda's employer was actually an affiliate company, SSP Partners. Yolanda sued SSPH-LP on October 18, 2004. She contended SSPH-LP never alleged any defect in parties or the absence of an employment relationship. According to Yolanda, SSPH-LP stated for the first time in its December 3, 2007 motion for summary judgment in the arbitration proceedings that it was not her employer and it did not operate the Circle K store at which she worked. Yolanda contended this was the first time SSPH-LP alleged SSP Partners employed her and operated the store. SSPH-LP and SSP Partners both later merged into Stripes LLC, which became the successor to both.

[3] More specifically, Stripes' limitations argument was that Yolanda reported an on-the-job injury on October 18, 2002; she and her husband filed their lawsuit on October 18, 2004; and Yolanda filed her arbitration demand on August 17,

on the grounds that the parties' arbitration agreement did not contemplate declaratory judgments or give the arbitrator authority to issue enforceable declaratory judgments. Stripes moved for reconsideration and the hearing arbitrator found that although he had the authority to render a declaratory decision, he concluded he could not do so in this case because the case involved tort liability. Stripes then initiated an appellate arbitration proceeding before a panel of appellate arbitrators.

The arbitration panel determined the hearing arbitrator had the authority to render declaratory decisions in tort actions. The panel then concluded (1) Yolanda's claims were barred by the applicable statute of limitations, (2) re-arbitration of matters already arbitrated in the first arbitration were barred by res judicata, collateral estoppel, or issue/claim preclusion, and (3) Yolanda's claims were barred by the arbitration panel's April 9, 2010, award and the trial court's October 12, 2010, order confirming the decision.

Back in the trial court, the Lopezes filed a motion to vacate the arbitration award and moved for sanctions, and Stripes responded. The trial court vacated the award for the following reasons:

> (1) The final award was procured by undue means because "Stripes submitted only defensive issues to arbitration rather than the entirety of the dispute as had been requested by [Stripes] in its Application for Order for Arbitration, and as had been ordered by the" trial court;

> (2) The arbitrators engaged in misbehavior "by which the rights of [Yolanda] have been prejudiced, making vacation of the Award proper under 9 U.S.C. § 10(a)(3)," and

> (3) The arbitrators "exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made, making vacation of the Award also proper under 9 U.S.C. § 10(a)(4)."

---

2007. The parties' arbitration agreement provides that "the party seeking arbitration must give written notice of any claim to the other party within the applicable statute of limitations" and "[n]either filing nor serving a lawsuit stops the applicable statute of limitations from continuing to run." Stripes argued that regardless of which entity Yolanda asserts her negligence claims against, those claims accrued on October 18, 2002 and she was required to initiate arbitration against any entity regarding her negligence claims by October 18, 2004. Stripes concluded that Yolanda's negligence claims were barred by the applicable two-year statute of limitations because she did not initiate arbitration until August 17, 2007, five years after her claim accrued.

The trial court ordered that all issues raised on appeal be reheard before a new panel of arbitrators. The court denied sanctions. Stripes now appeals.

## JURISDICTION

As a threshold matter, Yolanda contends this court lacks jurisdiction over this appeal because the arbitration decision is interlocutory and no statute authorizes an appeal. We disagree. The Texas Civil Practice and Remedies Code, which provides as follows, authorizes an interlocutory appeal such as the one here:

> In a matter subject to the Federal Arbitration Act (9 U.S.C. Section 1 et seq.), a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16.[4]

TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2013). This section became effective September 1, 2009. The notes to section 51.016 provide as follows:

> (a) Except as provided by this section, the change in law made by this Act applies to an action filed on or after the effective date of this Act or pending on the effective date of this Act.

> (b) The change in law made by this Act does not apply to the appeal of an interlocutory order in an action pending on the effective date of this Act if the appeal of the order is initiated before the effective date of this Act.

*See* Acts 2009, 81st Leg., ch. 820, § 1.

Yolanda argues section 51.016 is not applicable here because that section applies only to appeals of an interlocutory order in an action filed on or after September 1, 2009. Again, we disagree because the date the interlocutory appeal is filed controls, not the date the lawsuit is filed. *See J.B. Hunt Transp., Inc. v. Hartman*, 307 S.W.3d 804, 808 n.3 (Tex. App.—San Antonio 2010,

---

[4] Under the FAA, "[a]n appeal may be taken from . . . an order . . . modifying, correcting, or vacating an award . . . ." 9 U.S.C. § 16(a)(1)(E).

no pet.) ("However, section 51.016 only applies to an appeal initiated on or after September 1, 2009. Because the proceedings in this court were initiated prior to the effective date of section 51.016, this provision is not applicable to the case at hand, and the petition for writ of mandamus is the appropriate vehicle for this court to consider J.B. Hunt's complaint."); *In re Hydro Mgmt. Sys., L.L.C.*, No. 04-09-00808-CV, 2009 WL 5062320, at *1 (Tex. App.—San Antonio Dec. 23, 2009, orig. proceeding) (petition for writ of mandamus filed December 16, 2009 dismissed because section 51.016 applied; therefore, relator had adequate remedy by appeal). In this case, the notice of appeal was filed on October 16, 2013; therefore, section 51.016 applies and this court has jurisdiction over this appeal.

## STANDARD OF REVIEW

We review de novo a trial court's decision to confirm or vacate an arbitration award under the FAA. *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 397 (Tex. App.—Dallas 2009, pet. denied); *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 407 (Tex. App.—Dallas 2007, no pet.); *see also In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding) (applying de novo standard to review trial court's resolution of whether an arbitration provision under the FAA was enforceable). In applying this standard of review, we review the entire record. *Chestnut Energy Partners*, 300 S.W.3d at 397. All reasonable presumptions are indulged in favor of the arbitration award, and none against it. *Id.* An arbitration award is presumed valid and entitled to great deference and our review of the arbitration award is "extraordinarily narrow." *Myer*, 232 S.W.3d at 407-08. In a de novo review, the trial court's decision is given no deference. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998). The party seeking to vacate the arbitration award bears the ultimate burden of proving the grounds for vacatur. *Cambridge Legacy Group, Inc. v. Jain*, 407 S.W.3d 443, 449 (Tex. App.—Dallas 2013, pet. denied).

## GROUNDS TO VACATE FAA ARBITRATION AWARD

"Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans, LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). Under the terms of the FAA, an arbitration award must be confirmed unless it is vacated, modified, or corrected under one of the limited grounds set forth in sections 10 and 11 of the FAA. *See* 9 U.S.C. §§ 9-11 (West 2009). Under section 10, which is applicable in this case, a court may vacate an arbitration decision upon the application of any party to the arbitration where:

> (1) the award was procured by corruption, fraud, or undue means;
> (2) there was evident partiality or corruption in the arbitrators, or either of them;
> (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Lopezes moved to vacate the final decision on grounds one, three and four. However, because the Lopezes concede on appeal that undue means (their first ground) was not a proper basis for vacatur in this case, we address only whether the arbitration panel engaged in misconduct, exceeded its powers, or so imperfectly executed its powers that a mutual, final, and definite award upon the submitted subject matter was not made.

## MISCONDUCT AND EXCEEDING AUTHORITY

The trial court did not specify how the arbitration panel exceeded its authority or so imperfectly executed its powers that a mutual, final, and definite award upon the subject matter submitted was not made. However, the court did provide three reasons the arbitration panel engaged in improper conduct. Therefore, it appears the trial court combined the grounds of exceeding authority with engaging in improper conduct, which we address below.

**A.      Arbitration Panel's "Opinion"**

The parties' arbitration agreement required the appellate arbitrators' decision to "include a brief, written opinion addressing the issues before them." The trial court found the panel engaged in improper conduct because it summarily reversed the decision from which the appeal was taken and granted all relief requested by Stripes without any explanation for the award in contravention of the provision in the employee benefit plan that requires the arbitrators to provide a brief, written opinion addressing the issues before them.

On appeal, Stripes first relies on several cases that stand for the proposition that arbitrators are not required to explain their award. However, arbitration is a matter of contract. *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012). Parties have the right to arbitration according to the terms for which they contracted. *Western Emp'rs Ins. Co. v. Jefferies & Co., Inc.*, 958 F.2d 258, 261 (9th Cir. 1992). Arbitrators who act contrary to express contractual provisions, have exceeded their powers. *Rain*, 674 F.3d at 472. However, limitations on an arbitrator's authority must be plain and unambiguous. *Id.* The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences v. Bd. of Trustees of the Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989). Therefore, "arbitrators may exceed their power within the meaning of § 10(a)(4) if they fail to comply with mutually agreed-upon contractual provisions in an agreement to arbitrate." *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011). Whether an arbitrator has exceeded his authority is a question of law that we review de novo. *Green v. Ameritech Corp.*, 200 F.3d 967, 974 (6th Cir. 2000). Here, the trial court's determination that the arbitration panel violated the parties' arbitration agreement by granting Stripes relief without any explanation for the award or providing a brief written opinion addressing the issues before the panel involves an interpretation of the meaning of "brief written opinion addressing the issues."

As a general rule, an arbitrator need not explain his decision; therefore, in a typical arbitration where no specific form of award is requested, arbitrators may provide a "standard award" and simply announce a result. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award."); *Teel v. Beldon Roofing & Remodeling Co.*, 281 S.W.3d 446, 450 (Tex. App.—San Antonio 2007, pet. denied) ("arbitrators need not give reasons for their awards and even when they do provide such rationale, courts may not review that reasoning"). "At the other end of the spectrum, the Arbitration Rules allow parties to request that the arbitrators make 'findings of fact and conclusions of law,' a relatively exacting standard familiar to the federal courts." *Cat Charter*, 646 F.3d at 844. "Logically, the varying forms of awards may be considered along a 'spectrum of increasingly reasoned awards,' with a 'standard award' requiring the least explanation and 'findings of fact and conclusions of law' requiring the most." *Id.* A "reasoned award is something short of findings and conclusions but more than a simple result." *Sarofim v. Trust Co. of the W.*, 440 F.3d 213, 215 n.1 (5th Cir. 2006) (citations and internal quotation marks omitted).

In *Cat Charter*, the parties agreed the arbitrator would provide a "reasoned award." The Eleventh Circuit turned to Webster's Third New International Dictionary to determine whether the arbitration panel in its case had handed down a satisfactorily reasoned award. 646 F.3d at 844. The court noted Webster's defines "reasoned" as "based on or marked by reasoning," and "provided with or marked by the detailed listing or mention of reasons." *Id.* (citing to WEBSTER'S THIRD NEW INT'L DICTIONARY: UNABRIDGED 1892 (1993)). The court also noted the word "'reason'—as used in this context—is defined as 'an expression or statement offered as an explanation of a belief or assertion or as a justification of an act or procedure." *Id.* (citing to WEBSTER'S THIRD NEW INT'L DICTIONARY: UNABRIDGED 1891). The court concluded that "[s]trictly speaking, then, a 'reasoned' award is an award that is provided with or marked by the

detailed listing or mention of expressions or statements offered as a justification of an act—the 'act' here being, of course, the decision of the Panel." *Id.*

In *Green*, the parties agreed the arbitrator's award would be accompanied by "an opinion which explains the arbitrator's decision with respect to each theory advanced by Plaintiff . . . ." 200 F.3d at 970. The arbitrator rendered a six-page opinion in favor of Ameritech that set forth the plaintiff's claims of age and race discrimination and retaliation, and it focused primarily on a description of the "Corporate Resizing Process," which allegedly operated in a discriminatory manner. The opinion concluded as follows:

> AGE DISCRIMINATION
> Considering all the evidence, the Arbitrator finds that Plaintiff Daniel Green has not met his burden of proof that the decision to terminate his employment in November of 1992, constituted age discrimination in violation [of the] Elliott-Larsen Civil Rights Act.
>
> RACE DISCRIMINATION
> Considering all the evidence, the Arbitrator finds that Plaintiff Daniel Green has not met his burden of proof that the decision to terminate his employment in November of 1992, constituted race discrimination in violation [of the] Elliott-Larsen Civil Rights Act.
>
> RETALIATION
> Considering all the evidence, the Arbitrator finds that Plaintiff Daniel Green has not met his burden of proving, in accordance with the standards set under the Elliott-Larsen Civil Rights Act, that retaliation for protected activity was a factor which made a difference in the decision to terminate his employment in November of 1992. The Arbitrator finds no evidence to support the Plaintiff's position that retaliation was, in any way, a factor in Plaintiff Daniel Green's termination.

*Id.* at 971.

Green asked the district court to vacate the award on the grounds, in part, that the arbitrator breached the parties' agreement by not explaining the decision with respect to each theory advanced by the plaintiff. The district court agreed: "Here, the arbitrator did not 'explain' his decision with respect to each one of plaintiff's theories, as the term 'explain' is commonly understood. Rather, the arbitrator merely announced his decision with respect to each one of

plaintiff's theories. The arbitrator's opinion is totally conclusory and insufficient according to the terms of the Arbitration Agreement." *Id.* at 972. The district court vacated the arbitration agreement and remanded the matter to a new arbitrator to be selected by the parties.

On appeal, however, the Sixth Circuit reversed the district court's vacatur. The court noted "the arbitrator was not required by the agreement 'fully' to set forth the facts and his conclusions; the agreement simply called for an explanation. Although Arbitrator Googasian's opinion was brief and conclusory, he did 'explain' why Ameritech prevailed on each theory, namely, that Green had not met his burden of proving that the decision was discriminatory or retaliatory." *Id.* at 976. The court reasoned that "although the arbitrator's opinion was minimal, it was nevertheless adequate to satisfy the terms of the agreement." *Id.* at 970. The court concluded that "[i]f parties to an arbitration agreement wish a more detailed arbitral opinion, they should clearly state in the agreement the degree of specificity required." *Id.* at 976.

In this case, the arbitration agreement required the arbitration panel's decision to "include a brief, written opinion addressing the issues before them." The agreement does not define "opinion," nor does it use a modifier such as "reasoned." However, Black's Law Dictionary defines "opinion" in a fashion similar to how the *Cat Charter* court defined a "reasoned award": "[a] court's written statement explaining its decision in a given case, usu[ally] including the statement of facts, points of law, rationale, and dicta." BLACK'S LAW DICTIONARY 1125 (8th 2007). The dictionary defines a "memorandum opinion" as "[a] unanimous appellate opinion that succinctly states the decision of the court; an opinion that briefly reports the court's conclusion, usu[ally] without elaboration because the decision follows a well-established legal principle or does not relate to any point of law." *Id.* Turning to the three-page final decision here, the arbitration panel stated as follows:

(1) Any and all negligence claims that Yolanda Lopez ("Lopez") has asserted or hereafter may assert arising out of the injury which occurred on October 18, 2002 ("Lopez's claims") are barred by the statute of limitations;

(2) Lopez's claims are barred by res judicata, collateral estoppel, or issue/claim preclusion from the re-arbitration of matters that have already been arbitrated; and

(3) Lopez's claims are barred by arbitration and award. Specifically, they are barred by Arbitrator Lynne Gomez's award dated March 17, 2008. Such award was affirmed on appeal by a three judge panel on April 9, 2010, and was subsequently confirmed in Cause No. 2004-CVT-00-1507-D1 in the 49th Judicial District Court of Webb County, Texas on October 12, 2010.

. . .

This award is in full settlement of all claims and/or counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

The decision does not address "all issues" in the sense that it does not address Yolanda's claims. However, Yolanda's claims were not before the panel, and, even if they were, whether her claims were barred was a threshold issue. Therefore, we do not believe the arbitration panel was required to discuss the merits of her claims once it determined her claims were barred. On the issue of whether her claims were barred, we believe the final decision does more than merely state a "result." Keeping in mind the deference employed when evaluating arbitral awards and that all doubts must be resolved in favor of arbitration, we conclude the panel sufficiently explained its decision and issued "a brief, written opinion addressing the issues before them."

## B.    Abide by Trial Court's Order

Stripes' application to the trial court for the second arbitration requested that the Lopezes be "ordered to submit their claims, if any, to the American Arbitration Association . . . ." The trial court's order granted the application "with respect to claims asserted by" Yolanda,[5] and stated Stripes "may initiate proceedings with the American Arbitration Association by filing the

---

[5] The court denied the application as to the claims asserted by Yolanda's husband.

appropriate demand and other notices . . . ." In its arbitration demand, Stripes did not submit Yolanda's claims, but instead, submitted only its own defenses to Yolanda's claims. The trial court found the arbitrators "engaged in misconduct by which the rights of [Yolanda] have been prejudiced." The court also found they engaged in improper conduct by ignoring the trial court's order that Stripes initiate arbitration by submitting the entirety of the dispute to arbitration rather than defensive issues only. Presumably, the trial court determined Yolanda's rights were prejudiced because the arbitrators allegedly ignored the trial court's order that Stripes initiate arbitration by submitting the entirety of the dispute to arbitration.

Under the FAA, an arbitrator is guilty of misconduct "in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; *or of any other misbehavior by which the rights of any party have been prejudiced*." 9 U.S.C. § 10(a)(3) (emphasis added). "To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that [s]he was deprived of a fair hearing." *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006) (citing *El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001)); *see also Apex Fountain Sales v. Kleinfeld*, 818 F.2d 1089, 1094 (3d Cir. 1987) ("Under Federal law, misconduct apart from corruption, fraud, or partiality in the arbitrators justifies reversal only if it so prejudices the rights of a party that it denies the party a fundamentally fair hearing."). Thus, the inquiry here is two-part: (1) did the arbitration panel engage in misconduct because it ignored the trial court's order, and (2) did such misconduct deprive Yolanda of a fair hearing. For the reasons set forth below, we conclude the panel did not engage in misconduct.

First, the trial court's order does not specifically order Stripes to submit the "entirety of the dispute" or preclude Stripes from submitting "only defensive issues." In fact, the trial court uses

- 13 -

the permissive "may"—it struck the word "SHALL"—when it "ordered" "that [Stripes] may ~~SHALL~~ initiate proceedings with the American Arbitration Association by filing the appropriate demand and other notices . . . ." Second, there is nothing in the order expressly depriving Stripes of its limitations defense. Therefore, even if Stripes had submitted Yolanda's claims, whether those claims were barred by limitations was an issue Stripes also could have submitted and which the arbitrator would, reasonably, have considered first. *See Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008) ("We begin with the threshold issues regarding limitations and fraudulent concealment, as their resolution is potentially dispositive of the parties' remaining claims.").

Finally, an arbitrator's jurisdiction is defined by both the contract containing the arbitration clause and the demand for arbitration submitted to initiate the proceedings. *See Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 354 (5th Cir. 2004), *overruled on other grounds*, 562 F.3d 349 (5th Cir. 2009). Yolanda relies on the following language in the trial court's order as support for her argument that the trial court ordered Stripes to initiate arbitration by submitting only her claims, i.e., "the entirety of the dispute": "It is ORDERED that [Stripes'] Application for Order for Arbitration is GRANTED with *respect to claims asserted by [Yolanda]*." [Emphasis added.] However, even if we were to broadly read this decretal paragraph as implicitly ordering Stripes to submit Yolanda's claims, and not its own defenses, the trial court's order was not, itself, a demand for arbitration. Therefore, the arbitration panel drew its authority, not from the order, but from the parties' arbitration agreement and the demand submitted by Stripes.

The "Waiver and Arbitration Agreement" provides that an employee who elects to enroll in the employer's occupational injury benefit plan agrees that the plan's benefits, if any, shall be her "sole and exclusive remedy if [she] sustain[s] personal injuries . . . ." By signing the agreement, the employee acknowledges she gives up her right to a jury trial on all claims covered by the agreement and agrees to resolve claims by binding arbitration. The agreement broadly lists claims

and disputes covered by the agreement, including tort claims. The parties' "Employee Injury Benefit Plan Summary Description" requires that "the party seeking arbitration must give written notice of any claim to the other party within the applicable statute of limitations." In sum, both the plan summary and the arbitration agreement speak in terms of claims made by or against the employee. Thus, ordinarily, when an employee is injured, it is the employee who must initiate proceedings by filing the appropriate demand with the American Arbitration Association. However, here, Stripes was ordered to initiate proceedings. Thus, the scope of the arbitration was defined by the demand submitted by Stripes, and the arbitration panel did not exceed its authority or engage in misconduct by considering only Stripes' defenses.[6]

**C.      Granting Summary Judgment**

The hearing arbitrator denied Stripes' motion for summary judgment and dismissed the proceedings. In its notice of appeal to the appellate arbitrators, Stripes asked the arbitration panel to issue a final decision on appeal granting its motion for summary judgment. Stripes also asked the panel to declare the parties' rights under (1) the arbitration agreement's provision requiring initiation of arbitration within the applicable statute of limitations, (2) the April 9, 2010, arbitration decision that determined Yolanda's claims were time-barred, and (3) the trial court's October 12, 2010, order confirming the decision. The arbitration panel determined the hearing arbitrator had the authority to render declaratory decisions in tort actions. Then, although the hearing arbitrator did not rule on the merits of Stripes' motion for summary judgment, the panel concluded (1) Yolanda's claims were barred by the applicable statute of limitations, (2) re-arbitration of matters already arbitrated were barred by res judicata, collateral estoppel, or issue/claim preclusion, and (3) Yolanda's claims were barred by the arbitration panel's April 9, 2010, decision and the trial

---

[6] Because we conclude the arbitration appeals panel did not engage in misconduct, we do not address whether Yolanda was deprived of a fair hearing.

court's October 12, 2010, order confirming the decision. The Lopezes filed a motion to vacate the arbitration award. The trial court found the arbitration panel engaged in misconduct and exceeded its powers under the parties' arbitration agreement, which required the panel to act as a first-level appellate court, by reviewing the denial of a summary judgment motion, and then granting summary judgment on grounds not considered by the hearing arbitrator from whose decision the appeal was taken.

On appeal to this court, Yolanda asserts the only order the arbitration panel could have properly considered was the hearing arbitrator's order dismissing Stripes' request for declaratory relief. According to Yolanda, based on the arbitration panel's conclusion that the hearing arbitrator had the authority to render a declaratory decision, the panel should have reversed the dismissal, reinstated the claim, and then remanded the claim to a new hearing arbitrator for further proceedings. At that point, Yolanda contends Stripes could have re-urged its motion for summary judgment and the new hearing arbitrator could have considered the motion on its merits. Yolanda argues there is no standard of review by which appellate arbitrators can review the denial of a motion for summary judgment; therefore, the panel did not apply, and could not have applied, the same standard of review as a first-level appellate court under similar circumstances. For this same reason, Yolanda argues the panel had no basis by which to grant the relief Stripes requested in its motion for summary judgment.

Stripes counters that the arbitration agreement does not require the arbitration panel to "act as a first-level appellate court." Stripes contends the agreement simply requires the arbitration panel to apply the same standard of review, e.g. de novo or abuse of discretion, which a first-level appellate court would apply "in similar circumstances." According to Stripes, Yolanda's argument that the arbitration panel did not have the power to reverse and render (as opposed to reverse and remand) involves not the standard of review, but the *relief* the panel was empowered to award.

Stripes argues that the arbitration agreement's language authorizing the panel, by majority vote, to "affirm, reverse, render, or modify an arbitration award" does not limit the panel to the same relief as a first-level appellate court, but instead, only requires the panel to apply the same standard of review a first-level appellate court would apply to the cause of action or defense on appeal in similar circumstances.

The arbitration agreement specifies the form of an arbitration award. The "General Procedures" provide as follows:

> b. The hearing arbitrator shall apply the substantive law (and the laws of remedies, if applicable), in the state in which the claim arose, or federal law, or both, depending on the claims asserted. The hearing arbitrator shall also strictly apply the Federal Rules of Evidence, except that deposition testimony of a witness may be used at the arbitration hearing without regard to whether the witness is unavailable. The hearing arbitrator shall provide brief findings of fact and conclusions of law. All arbitration decisions and awards shall be kept strictly confidential and shall not be disclosed to anyone not a witness, attorney, party representative, or party who actually attended the arbitration hearing.

> c. The hearing arbitrator shall have jurisdiction to hear and rule on prehearing disputes and is authorized to hold prehearing conferences by telephone or in person as the arbitrator deems necessary. The hearing arbitrator will have the authority to hear a motion to dismiss and/or a motion for summary judgment by any party and in doing so shall apply the standards governing such motions under the Federal Rules of Civil Procedure. . . . .

The "Appeal Procedures" section provides as follows:

> g. The appellate arbitrators shall apply the same standard of review as the first-level appellate court would apply to the cause of action or defense on appeal in similar circumstances. If both federal and state-law causes of action (and/or defenses) are before the appellate arbitrators (either in a single appeal or as the result of a cross-appeal), the appellate arbitrators shall apply only the standards of review utilized by the United States Court of Appeals for the Fifth Circuit in similar circumstances.

> h. By majority vote, the appellate arbitrators may affirm, reverse, render or modify an arbitration award. . . . The appellate arbitrators' decision shall include a brief, written opinion addressing the issues before them, and such opinion shall be delivered to the parties and the American Arbitration Association within thirty (30) days after the conclusion of any briefing schedule or any oral argument or as the parties may agree. . . . .

We do not agree with Yolanda that the appellate arbitrators lacked the authority to review the denial of Stripes' motion for summary judgment under the circumstances presented here. In the Fifth Circuit, with exceptions that do not apply here, a party may not immediately appeal a district court's decision to deny summary judgment. *Gibson v. Kilpatrick*, 734 F.3d 395, 399 (5th Cir. 2013). However, in this case, the denial of Stripes' motion for summary judgment by the hearing arbitrator did not result in an unappealable interlocutory judgment. Instead, the decision resulted in a final order dismissing the only pending claim as follows:

> [Stripes] Motion for Reconsideration of Summary Judgment Declaratory Relief is DENIED; that being the case, and with no other matters now before the arbitrator for decision, the Claim is hereby DISMISSED.
> . . .
> This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

Because the arbitrator's decision resulted in an order that disposed of all claims by all parties, it was a final order subject to appeal in accordance with the "Appeals Procedures" in sections g and h of the arbitration agreement. Therefore, we next address Yolanda's argument that the arbitration panel lacked the authority to grant a motion for summary judgment.

In its final decision, the appellate panel found that its authority to resolve the appeal derived from the Appeal Procedures contained in sections g and h, quoted above. Based upon its interpretation of this contract language, the panel believed it had the authority to resolve the issues before it. The issue before the panel was Stripes' request for a final award in favor of Stripes "based on [the panel's] constructions of, and declaring the effect of and the Parties' rights under" (1) the April 9, 2010, arbitration decision in which the first arbitration appeals panel concluded the "Arbitrator correctly concluded that [Yolanda's] claims were barred by the applicable statute of limitations" and (2) the trial court's October 12, 2010, order that confirmed this decision. The April 9, 2010, nine-page award fully set forth the procedural and factual background, the

applicable law, and an analysis. The 2010 award also discussed the timeliness of the appeal and the statute of limitations.

During the 2013 arbitration proceedings and in this appeal, Yolanda does not argue the arbitration panel could not consider the 2010 decisions of the hearing arbitrator and arbitration panel. In her answer to Stripes' motion for summary judgment requesting declaratory relief, Yolanda argued to the hearing arbitrator that the "earlier ruling [from 2010] has no impact on these proceedings because [Stripes], rather than [Yolanda], has filed the pending claim for arbitration, and [Yolanda] does not assert limitations as a defense thereto."[7] In her motion to vacate the 2013 arbitration panel's decision, she raised the same argument that denying Stripes the option of asserting its limitations defense "was only right since it was SSPH-LP and later Stripes who were responsible for this dispute dragging on as long as it has by having allowed [the lawsuit] to proceed against a peripheral entity." She did not argue the 2013 arbitration panel had no authority to review the award of the 2010 arbitration panel.

We do not, and cannot, overturn the appellate panel's decision because to do so requires us "to rely on a finding that [the panel] [misconstrued] the parties' intent [as expressed in the parties' arbitration agreement]." *Sutter*, 133 S. Ct. at 2070 (arbitrator construed contract that required binding arbitration of contractual disputes and found it permitted class arbitration). "Convincing a court of an arbitrator's error—even his grave error—is not enough. So long as the arbitrator was 'arguably construing' the contract—which this one was—a court may not correct his mistakes under § 10(a)(4)." *Id.* (internal citation omitted). Here, we conclude the appellate panel was "arguably construing" the parties' arbitration agreement as granting it the authority to

---

[7] Yolanda also argued that, "[b]y compelling Stripes to initiate arbitration proceedings as the claimant, the trial court could effectively deprive [Stripes], as punishment for its conduct, of the limitations defense that had been used earlier since a claimant cannot assert limitations against itself."

review the April 9, 2010, arbitration decision. Therefore, we cannot conclude the panel engaged in misconduct and exceeded its powers under the parties' arbitration agreement. We also conclude, contrary to the trial court's finding, that the decision was a final and definite decision because it resolved the entirety of the dispute between Yolanda and Stripes.

## CONCLUSION

For the reasons stated above, we reverse the trial court's order vacating the "Final Award of Arbitration Panel," remand the cause, and order the trial court to confirm the Final Award of Arbitration Panel."

Sandee Bryan Marion, Justice