

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00267-CV

**DIATHEGEN, LLC**,
Appellant and Cross-Appellee

v.

**PHYTON BIOTECH, INC.**, Phyton Biotech, LLC, Phyton Biotech, GmbH,
Appellees and Cross-Appellants

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-17463
Honorable Janet P. Littlejohn, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Jason Pulliam, Justice

Delivered and Filed:  August 26, 2015

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

This is an appeal and cross-appeal from the trial court's judgment that partially vacated an arbitration award.  We reverse the trial court's partial vacatur and reinstate the arbitration panel's damages award.  In all other respects, we affirm the trial court's judgment.

### BACKGROUND

The arbitration arose from a sub-license agreement between DiAthegen, LLC and Phyton Biotech, Inc.  DiAthegen had acquired exclusive rights in patents and patent applications relating to certain plant cell protein technology developed at Ohio University.  The licensed technology

had the potential to be developed into a long acting drug used to treat a rare and serious condition caused by the secretion of excessive human growth hormone. In April 2006, DiAthegen entered into an exclusive sub-license agreement ("the SLA") with Phyton Biotech, Inc., which had a research facility in Princeton, New Jersey, where it developed new drugs using cultured plant cell technology. The SLA provided that Phyton would develop, obtain approval for, and market a new drug using the patented technology. It granted Phyton the exclusive rights to use and exploit the technology, but also allowed Phyton to relinquish its rights at any time. In return, Phyton agreed to an anti-shelving provision intended to prevent Phyton from keeping the technology under its exclusive license while failing to develop it. The SLA required Phyton to use commercially reasonable efforts to develop a commercially viable product and required Phyton to commit no fewer than three full time equivalent personnel devoted to development of the product at all times. It also required Phyton to use commercially reasonable efforts to file an Investigational New Drug application with the FDA by December 2009. Under the SLA, DiAthegen was entitled to lump sum payments when certain "milestones" were reached and would be entitled to royalties if and when a product were marketed. On termination of the agreement, Phyton was required to return the material DiAthegen had furnished. However, any improvements invented "solely" by Phyton would remain its exclusive property, subject to the patent rights.

The SLA provided that in the event of an uncured breach by Phyton, DiAthegen was entitled to terminate the agreement and "to recover all losses, costs, expenses and damages incurred or suffered by it." However, section 13.5 of the agreement provided that "in no event will a party be liable to another party for any consequential, incidental or special damages, including lost profits and revenues." Section 13.8 of the SLA required all disputes, other than ones related only to the nonpayment of money within the time required by the contract, be resolved through binding arbitration before the Judicial Arbitration and Mediation Service. That section provided that the

arbitrators would have no authority to add or detract from the parties' agreement and "have no authority to award exemplary, punitive, consequential, special, indirect, incidental, or treble damages." The parties agreed that the Federal Arbitration Act and the substantive law of Ohio would apply in any arbitration proceeding.

Phyton initially employed about forty people at its Princeton lab and spent over twenty million dollars through August 2007 to reengineer the biological material. However, in August 2007, Phyton's parent company (DFB Pharmaceuticals) instructed Phyton to cease funding the project. In October 2007, Phyton significantly reduced the size of its Princeton lab staff. Some work on the project continued in Princeton and at other locations. Phyton also paid consultants through October 2008 to seek additional funding for the project. Phyton ultimately ceased all work on the project and it missed the December 2009 target date for filing with the FDA. DiAthegen gave Phyton written notice of breach in January 2010, and again in September 2010. In December 2010, after the cure period, DiAthegen formally terminated the contract and demanded return of its materials as required by the contract.

*Arbitration*

DiAthegen served a demand for arbitration against Phyton Biotech, Inc., Phyton Biotech, LLC, and Phyton Biotech, GmbH. DiAthegen alleged that Phyton Biotech, LLC was the successor by reorganization of Phyton Biotech, Inc., and that Phyton Biotech, GmbH assumed all the obligations under the SLA by assignment.[1] DiAthegen alleged breaches of section 3.1 of the SLA (failure to use commercially reasonable efforts to bring a commercially viable product to the market) and section 8.5 (failure to cease using the Subject Technology and to return all copies after DiAthegen terminated the contract). DiAthegen sought damages for reduced patent royalty rights,

---

[1] The SLA authorized Phyton Biotech Inc. to assign its rights and obligations under the agreement to an affiliate and to any successor by way of merger or consolidation.

the diminution of value of the Subject Technology, the cost to perform Phyton's unfulfilled contractual obligations, fees, costs, and interest. It also sought declarations that the SLA had been terminated and that Phyton had no further rights in the Subject Technology. The Phyton entities filed a joint response. They asserted numerous affirmative defenses and subsequently filed joint counterclaims for breach of contract, fraud, and breach of the SLA warranty provision. A panel of three arbitrators was selected to hear the case.

Phyton filed a motion seeking summary judgment on all of DiAthegen's claims for damages. Phyton argued all the damages sought were consequential and indirect and therefore barred by the limitation of liability in section 13.5 of the SLA and beyond the arbitrators' authority to award, pursuant to section 13.8(c)(v) of the SLA. After briefing and argument, the arbitration panel granted the motion in part, holding DiAthegen could not recover lost royalties or reduced royalty rights.

After a full hearing and further briefing, the panel issued a partial award on September 5, 2012, and a final award on November 16, 2012. The panel held that "Phyton" breached section 3.1 of the SLA by failing to maintain at least three full time equivalent employees devoted to development while refusing to give up its exclusive license rights during the period from November 2008 through November 2010. The panel also held "Phyton" violated section 8.5 by failing to cease use of the Subject Technology and by failing to return all copies after DiAthegen terminated the contract. The panel ruled that DiAthegen did not violate the agreement, did not commit fraud, and did not waive its right to declare a breach.

The award recognized both the agreement that the parties would not be liable for consequential damages and the contractual limitation on the power of the arbitration panel to award indirect damages. The panel ruled these provisions precluded any award to DiAthegen for loss of royalty income because the alleged lost royalty damages are consequential damages. The panel

also found that DiAthegen had not negotiated an absolute right to or guarantee of the filing of an Investigational New Drug application and therefore was not entitled to damages for the cost of completing progress toward filing an application with the FDA. However, the panel found DiAthegen had specifically negotiated for the minimum performance standard and that Phyton failed to meet the standard. The panel found DiAthegen suffered direct benefit of the bargain damages in the amount of $1,875,000 — the cost of three full-time-equivalent, fully-supported personnel for the twenty-five month period after October 2008. The panel also found direct damages in the amount of the cost of reconstituting the Subject Technology, which it found to be $10,000.

The arbitration panel's final award ordered "Phyton" to pay DiAthegen $1.875 million and to either return the original and all copies of the Subject Technology or pay $10,000 to DiAthegen. The panel declared that "Phyton" had no further right, title, or interest in the Subject Technology and ordered "Phyton" to make no further use of it. In addition, the panel awarded attorney's fees of $405,583, costs of $270,452, pre-award interest of $121,502, and post-award interest at the rate of $154.11 per day.

### *Confirmation Proceedings*

DiAthegen filed an application to confirm the award, and Phyton filed a petition to vacate it. The proceedings were consolidated. After briefing and oral argument, the trial court signed an order on March 21, 2014. The court vacated the award of $1.875 million for breach of section 3.1 of the contract and the pre-award interest, and it reduced the post-award, pre-judgment interest on the remaining award to $56.39 per day, based on the trial court's determination that the damages awarded were consequential damages precluded by the SLA. In all other respects, the court confirmed the award. The court's order declared that the three Phyton entities have no further right, title to, or interest in the Subject Technology and permanently enjoined each of them from

making any use of the Subject Technology. The court's order decreed the three Phyton entities are jointly and severally liable for the remaining portions of the award and awarded post-judgment interest from the date of the trial court's order at the statutory rate. Finally, the court denied DiAthegen's request for attorney's fees incurred in the confirmation proceedings. All parties appealed.

On appeal, DiAthegen argues the trial court erred by partially vacating the award and by denying its request for attorney's fees incurred in the confirmation litigation. The Phyton entities argue in their cross-appeal that the trial court erred by failing to vacate the awards of attorney's fees, costs, and interest associated with the vacated damage award and the court erroneously modified the arbitration award by decreeing the Phyton entities are jointly and severally liable.

DISCUSSION

**The Vacated Damage and Interest Award**

Phyton's motion to vacate asserted that the arbitration panel exceeded its authority because the $1.875 million were indirect damages under Ohio law and therefore beyond the arbitrators' power to award. The trial court agreed. DiAthegen argues the arbitration panel acted within its authority in reviewing the evidence and the applicable law and concluding that the damages at issue were "direct 'benefit of the bargain'" damages and not indirect or consequential damages. It contends the trial court erred in substituting its judgment for that of the arbitration panel.

*Legal Standard*

Pursuant to the parties' contract, the Federal Arbitration Act (FAA) governs the arbitration and review of the award. *See* 9 U.S.C. § 1 *et seq.* When a party to an arbitration award under the FAA applies for an order to confirm the award, the court must confirm the award unless one of the limited grounds listed in sections 10 or 11 of the FAA for modifying, vacating, or correcting the award is shown. 9 U.S.C. § 9. The party seeking to vacate an arbitration award bears the burden

of proving a ground for vacatur. *SSP Holdings Ltd. P'ship v. Lopez*, 432 S.W.3d 487, 492 (Tex. App.—San Antonio 2014, pet. denied). Phyton sought to vacate the arbitration award under section 10(a)(4) on the ground that "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4).

Parties have a right to arbitration according to the terms of their contract. *Rain CII Carbon, LLC v. Conoco Phillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012); *SSP Holdings*, 432 S.W.3d at 493. An arbitrator exceeds his powers if he acts contrary to express contractual provisions. *Rain*, 674 F.3d at 472; *SSP Holdings*, 432 S.W.3d at 493. Thus, an arbitration award that ignores a clear contractual limitation on the authority of the arbitrator should be vacated. *Rain*, at 472. However, "[i]t is not enough . . . to show that the [arbitrator] committed an error—or even a serious error. Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (internal citations and quotation marks omitted). Because "the task of an arbitrator is to interpret and enforce a contract, not to make public policy," it "is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l*, 559 U.S. 662, 671, 672 (2010) (internal brackets and quotations omitted). The question before the court is "whether the arbitrators even arguably interpreted the Agreement in reaching their award; it is not whether their interpretations of the Agreement or the governing law were correct." *BNSF R. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 789 (5th Cir. 2015).

"We review de novo a trial court's decision to confirm or vacate an arbitration award under the FAA." *SSP Holdings*, 432 S.W.3d at 492. However, because of the strong policy favoring arbitration, judicial review of an arbitration award is "exceedingly deferential." *BNSF*, 777 F.3d at 787. We review the entire record and indulge all reasonable presumptions in favor of the

arbitration award and none against it. *SSP Holdings*, 432 S.W.3d at 492. In our review, the trial court's decision is given no deference. *Id.*

*Analysis*

The parties agree the arbitration panel's authority was limited by the express terms of the SLA and the SLA provided the "arbitrators . . . have no authority to award exemplary, punitive, consequential, special, indirect, incidental, or treble damages." In the arbitration proceeding, Phyton filed a motion for summary judgment, asking the panel to rule that DiAthegen's damage theories were precluded by the contract. The parties submitted lengthy briefs on the issue of the classification of the damages sought under Ohio law and presented oral argument to the panel. The panel's interlocutory summary ruling expressly recognized the contractual limits on its authority to award damages. The panel ruled that the $30 million in lost royalty income DiAthegen sought to recover was consequential damages barred by the contract, but ruled it would hear evidence and additional argument on what damages would be appropriate. The panel subsequently held a full evidentiary hearing. The parties submitted extensive post-hearing briefs, including further argument on the classification of the damages sought under Ohio law.

In its final award, the panel found DiAthegen had expressly negotiated for the minimum performance standard in the SLA in order to protect against Phyton shelving the technology. Phyton breached the contract by failing to meet the performance standard for twenty-five months, while retaining its exclusive rights to the technology. The panel found the evidence established the cost of the unperformed contractual obligations was $1.875 million. The panel expressly recognized the contractual limitations on Phyton's liability and on the panel's ability to award damages, and analyzed the parties' exhaustive briefing on the proper characterization of DiAthegen's damages claims under Ohio law. The panel found the $1.875 million damages naturally resulted from Phyton's breach and were losses contemplated by the parties when they

contracted.[2] It concluded that under Ohio law and DiAthegen's' proof, the $1.875 million were recoverable direct damages and were not indirect, consequential, or special damages.

The record does not support Phyton's assertion that the arbitration panel disregarded the contractual limitations on its authority. Rather, the panel expressly acknowledged contract limitation on damages and that it was bound by it. Whether the value of the promised performance in circumstances such as those presented in this case is a compensable, direct damage encompassed by benefit of the bargain principles is not a settled question under Ohio law. The arbitration panel received extensive briefing on the issue, heard arguments on it, and issued a reasoned decision applying the governing law to the facts. The panel's conclusion that some of the damages DiAthegen sought were precluded by the contract and others were not was rationally inferable from the facts, the contract, and the applicable Ohio law. Phyton has not shown that the award cannot even arguably be construed as direct damages under Ohio law. At worst, the panel made an error of law classifying the damages under Ohio law. However, "convincing a court of an arbitrator's error—even his grave error—is not enough." *Oxford Health*, 133 S. Ct. at 2070. Accordingly, we reverse the trial court's partial vacatur of the damage award and its vacatur of the associated pre- and post-award interest.

### Attorney's Fees for Post-Award Proceedings

In its next issue, DiAthegen argues the trial court erred by failing to award the reasonable attorney's fees it incurred in the confirmation proceedings.

---

[2] In contrast, the panel refused to award damages for lost royalties because it found they were consequential, not direct damages. The panel also rejected DiAthegen's claim for $13 million sought as the cost to complete progress toward filing an Investigational New Drug application with the FDA. The panel found "the benefit of the bargain DiAthegen negotiated in the [contract] was not an absolute right to, or a guarantee of, the filing of an IND." The panel concluded that the loss of an Investigational New Drug filing therefore was not a causally-linked probable result of the breach and was not compensable under the contract and Ohio law.

The arbitration panel found DiAthegen was the prevailing party and awarded it fees and costs incurred through the date of the award. The panel was not asked to award and did not consider or mention an award of contingent fees in the event a suit to confirm the award was necessary. In the trial court, DiAthegen presented evidence of the reasonable fees incurred in the trial court and the reasonable fees that would be incurred if the judgment were appealed. Phyton did not dispute the reasonableness of the fees requested; rather it objected to an award of fees altogether. The trial court did not award attorney's fees, but the judgment did not indicate whether this was because the trial court found DiAthegen was not the prevailing party or because it concluded it was not authorized to make a fee award.

On appeal, DiAthegen contends the parties' agreement expressly authorizes the trial court to make an award of reasonable attorney's fees, and it requests this court to render judgment in the amount established by the undisputed evidence. Phyton contends the agreement does not authorize a fee award for post-arbitration litigation. Phyton argues alternatively that if the contract is construed to authorize an award post-arbitration fees, it does not authorize *the trial court* to make the award; rather DiAthegen was required to submit the issue to the arbitration panel, which it did not do.

Neither the Federal Arbitration Act nor Ohio law authorize the trial court to award post-arbitration fees to the prevailing party in the absence of bad faith or an agreement for such an award. *See Crossville Med. Oncology, P.C. v. Glenwood Sys.*, — F. App'x —, No. 14-5444, 2015 WL 1948329, at *2, (6th Cir. 2015); *Menke v. Monchecourt*, 17 F.3d 1007, 1008-10 (7th Cir. 1994); *Handel's Ents., Inc. v. Wood*, Nos. 04 MA 238 & 05 MA 70, 2005-Ohio-6922, at ¶¶ 102-107, 2005 WL 3536475, at *16-17 (Ohio Ct. App. [7th Dist.] Dec. 22, 2005); *see also Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 436 (Tex. App.—Dallas 2004, pet. denied) ("If an arbitration award includes an award of attorneys' fees, a trial court may not award additional attorney fees for

enforcing or appealing the confirmation of the award, unless the arbitration agreement provides otherwise."); *Monday v. Cox*, 881 S.W.2d 381, 386 (Tex. App.—San Antonio 1994, writ denied) ("Nothing in this opinion prevents parties from providing by contract that the court shall award the prevailing party its attorney's fees in a suit to enforce the arbitration agreement."). In this case, the parties disagree both as to whether the SLA authorizes an award of attorney's fees incurred in post-award proceedings and whether such an award, if authorized, is to be made by the trial court or must be made by the arbitration panel.

Section 13.8 of the SLA is entitled "Dispute Resolution" and sets forth the procedures the parties agree to follow in the event of a dispute or disagreement. The relevant provisions of section 13.8 of the SLA state:

> 13.8 *Dispute Resolution*. Should any dispute or disagreement arise during the Term of this Agreement, the Parties agree to following the process and procedures specified in this Section 13.8.
>
> . . .
>
> (b) Excluded Causes. If the only dispute relates to nonpayment of moneys within the time required under this Agreement, the claimant may commence legal action in any court of competent jurisdiction in accordance with Article 11 of this Agreement.
>
> (c) Arbitration. Except as provide[sic] for in Section 13.8(b) above, all claims, disputes, controversies and other matters in question between the Parties, arising out of, or relating to this Agreement, or the breach thereof including, without limitation, matters involving negligence, strict liability of [sic] intentional acts or omissions by either, which cannot be resolved by them, shall be settled by binding arbitration in accordance with this Agreement and the following procedure subject, however, to the right of any Party to apply to a court of competent jurisdiction for a temporary restraining order, preliminary injunction or other equitable relief: (1) to preserve the *status quo*, or (2) to prevent irreparable harm, e.g., any Party shall have the right to institute an action in the event that any other Party infringes its respective proprietary rights or breaches nondisclosure obligations.
>
>> (i) Any dispute relating to this Agreement or its subject matter— including disputes as to its validity, performance, breach or termination— which cannot be settled by negotiation, shall be submitted to

J.A.M.S/ENDISPUTE for arbitration between them pursuant to J.A.M.S/ENDISPUTE Streamlined Arbitration Rules and Procedures ("Arbitration Rules") as in force on the date of commencement of arbitration, and as modified by this Section 13.8.

. . .

(f)    Costs of Arbitration.  Each Party shall pay one half (1/2) the costs of arbitration, except that each Party shall pay the expenses it incurs for its own legal representation and assistance.  The prevailing Party in any arbitration proceeding or litigation hereunder shall be entitled, in addition to such other relief as may be granted, to recover reasonable attorney's fees and the costs incurred in connection with arbitration under this Agreement.

. . .

(h)    Post-Award Proceedings.  Judgment on the award may be entered in any court of competent jurisdiction.  The validity and construction of this Section shall be governed by the laws of the State of Ohio, without regard either to its conflict of laws rules or its Arbitration statute, and the U.S. Arbitration Act, 9 U.S.C. §§ 1 et seq.

DiAthegen focuses on the language of section 13.8(f) alone, and argues that it expressly gives the relevant tribunal (whether in arbitration or litigation) authority to award reasonable attorney's fees and costs.

Phyton argues the SLA does not authorize an award of post-arbitration fees at all.  Phyton contends DiAthegen misinterprets the phrase "litigation hereunder" in section 13.8(f), and argues that it must be construed in light of the rest of section 13.8.  Phyton argues "litigation hereunder" in section 13.8(f) refers to the two specific instances in which section 13.8 of the SLA authorizes litigation of a dispute: section 13.8(b), which authorizes legal action when the dispute relates only to the nonpayment of money within the time required by the agreement, and section 13.8(c), which authorizes a party to seek equitable relief to preserve the status quo or to prevent irreparable harm.  Phyton contends that when a dispute is resolved by arbitration, the agreement authorizes a fee award only for the arbitration and that the parties did not agree fees would be awarded in any post-award proceedings.

Phyton argues alternatively that even if "litigation hereunder" in section 13.8(h) arguably includes post-award confirmation proceedings, both the dispute about the meaning of the contract and the claim for such fees were required to be submitted to the arbitration panel. In support of its argument, Phyton points to the broad language of section 13.8(c), which requires that "all claims, disputes, controversies and other matters in question between the Parties, arising out of, or relating to this Agreement" be settled by arbitration.

We agree with Phyton that the SLA does not expressly authorize the trial court to make an award of attorney's fees in a post-award confirmation proceeding. The language of section 13.8(h) reflects the parties' intent that in any post-award proceeding the trial court was authorized only to determine whether to enter judgment on the award. The broad language of the arbitration provision in section 13.8(c) required the parties to submit their entire dispute, including issues about the recoverability and amount of any post-award attorney's fees, to the arbitration panel. We hold the trial court did not err in not awarding additional attorney's fees incurred in the post-arbitration confirmation proceedings. *See Menke*, 17 F.3d at 1010.

## Phyton's Cross-Appeal

Phyton's cross-appeal raises two issues. In its first issue, Phyton argues the trial court erred by failing to vacate the awards of attorney's fees, arbitration costs, and interest that related to the vacated damage award. Phyton argued that after the trial court vacated the $1.875 million award, DiAthegen was no longer the prevailing party and its degree of success was *de minimis*. Because we fully reinstate the vacated damage award, this issue is moot.

In its second issue, Phyton argues the trial court erred by rendering judgment against each of the three Phyton entities jointly and severally, arguing this was an impermissible modification of the arbitration award. Phyton contends the arbitration panel's award against "Phyton" referred only to Phyton Biotech, Inc., the party that signed the SLA. DiAthegen contends the trial court

did not modify the award, but merely implemented the award and rendered an enforceable judgment. We agree with DiAthegen.

DiAthegen's demand for arbitration named the three Phyton entities as respondents. DiAthegen alleged the agreement was signed by Phyton Biotech, Inc., Phyton Biotech, LLC was the successor of Phyton Biotech, Inc., and Phyton Biotech, GmbH, was the assignee of Phyton Biotech, Inc.'s rights and obligations under the Agreement. The demand prayed for judgment against each of the Phyton entities that had assumed the obligations of the SLA. Throughout the demand and its subsequent pleadings, DiAthegen refers to the three entities collectively as "Phyton." The three Phyton entities filed a joint answer to the demand for arbitration, expressly referring to themselves collectively as "Phyton." The parties and the arbitration panel referred to the three entities collectively as "Phyton" throughout the arbitration. The corporate representative of the Phyton entities testified at the arbitration hearing that Phyton Biotech, Inc. was reorganized into Phyton Biotech LLC after performance began on the contract. He testified he was certain that Phyton GmbH assumed the agreement from Phyton Biotech LLC, and "fairly certain" it was pursuant to a formal assignment. Phyton's representative further testified that Phyton GmbH assumed responsibility for the obligations of the agreement ("We're not disputing that GmbH is taking over . . . responsibility under this agreement."). None of this evidence appears to have been in dispute. DiAthegen submitted a post-hearing brief that included its requests for conclusions of law, one of which sought a conclusion that the award be joint and several against each of the three Phyton entities.

The arbitration panel's Final Award lists the three Phyton entities in the style and states the three entities will be referred to jointly as "Phyton." The award does not contain any findings specifying which entity entered into the contract, which entities assumed obligations under the contract, or which ones breached it. Rather, the panel simply refers to "Phyton" throughout the

award, without any discussion of the relationship between the three entities. The award does not mention DiAthegen's request for a conclusion that the award be joint and several. In the decretal part of the award, the panel declares that "Phyton" breached the agreement, ordered that "Phyton" pay damages to DiAthegen and return the technology to DiAthegen, declared that "Phyton" had no further right, title, or interest in the technology, and ordered "Phyton" not to make any further use of it. The award does not differentiate between the three parties or apportion responsibility among them.

Phyton initially contends that the arbitration award was rendered only against Phyton Biotech, Inc., the original party to the contract. We disagree. The principal purpose of an action for confirmation is to implement the arbitrators' award by making the award a final, enforceable judgment of the court. *Menke*, 17 F.3d at 1009. In order to make the award enforceable, the trial court was required to render judgment against the parties the arbitration panel found were liable for breaching the SLA. The award was against "Phyton," which the award itself defined as including Phyton Biotech, Inc., Phyton Biotech, LLC, and Phyton Biotech, GmbH. The award does not differentiate between the three entities and nothing in the award suggests the arbitration panel found one to be more or less responsible than the other. The only reasonable construction of the final award is that the arbitration panel found all three entities liable for the breaches of the SLA and rendered the final award against them collectively. The trial court therefore did not err in rendering judgment against all three.

Phyton next contends that the arbitrators rejected a request to impose joint and several liability against the three Phyton entities, and the trial court therefore impermissibly modified the award. Initially, we find the cases Phyton relies on to be distinguishable because in each case the arbitrators had either *expressly* considered and rejected joint and several liability or expressly rendered its award against only one specifically named defendant. *See Broemer v. Houston*

*Lawyer Referral Serv.*, 407 S.W.3d 477, 483-85 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (reversing trial court's modification of an arbitration award to impose judgment against an individual, jointly and severally with an entity, when arbitrator had expressly stated, "I do not find a reason to pierce the corporate veil and impose individual liability"); *Clyde Bergemann, Inc. v. Sullivan, Higgins & Brion PPE, LLC*, No. 3:08-CV-00162-KL, 2011 WL 5439191, at *4 (D. Or. Nov. 9, 2011) (trial court declined to render judgment making defendants jointly and severally liable where arbitrator refused to do so and expressly noted his reason for not doing so); *Thacker Const. Co. v. A Betterway Rent-A-Car, Inc.*, 368 S.E.2d 178, 180 (Ga. Ct. App. 1988) (holding trial court impermissibly modified arbitration award by rendering judgment against joint venture and each of the two venturers, jointly and severally, where the arbitration award was expressly entered against the joint venture alone); *see also Kosty v. S. Shore Harbour Cmty. Ass'n, Inc.*, 226 S.W.3d 459, 465 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (trial court erred in rendering judgment for attorney's fees when issue of attorney's fees had been submitted to the arbitrator, who had expressly considered and rejected both parties' request for fees). Here, the arbitration panel did not expressly consider whether the Phyton entities were jointly and severally liable; the award is silent on the issue. We thus consider whether under Ohio law, joint and several liability is implicit in the award.

Under Ohio law, when defendants answer jointly and go to trial upon a joint answer, a joint judgment may be rendered against them. *First Nat'l. Bank of Akron v. Cann*, 503 F. Supp. 419, 435 (N.D. Ohio 1980), *aff'd*, 669 F.2d 415 (6th Cir. 1982); *22810 Lakeshore Corp. v. Xam, Inc.*, No. 79091, 2002-Ohio-20, 2002 WL 22096, at *2 (Ohio Ct. App. [8th Dist.] Jan. 3, 2002). A joint judgment against multiple parties on the same obligation that does not apportion liability results in joint and several liability. *See, e.g.*, *Interstate Gas Supply, Inc. v. Calex Corp.*, No. 04AP-980, 2006-Ohio-638, ¶¶ 46, 53, 64; 2006 WL 328679, at *10-13 (Ohio Ct. App. [10th Dist.] Feb. 14,

2006); *22810 Lakeshore*, 2002 WL 22096, at *1-*3; *Spicer v. James*, 21 Ohio App.3d 222, 223, 487 N.E.2d 353, 355 (1985).

Moreover, Ohio law authorizes a joint and several judgment under the circumstances of this case. When multiple parties assume obligations under an agreement, the obligation is presumed to be joint and the parties are jointly liable for the entire amount of any damages awarded for breach of the obligation unless the judgment apportions liability. *Interstate Gas*, 2006 WL 328679, at *11-12; *Spicer*, 487 N.E.2d at 355. When obligors are jointly liable for damages, the trial court properly renders judgment against them, jointly and severally, for the entire amount owed. *Interstate Gas*, at *10-13; *see also Pinzone v. Pinzone*, No. 2011-L-133, 2012-Ohio-6126, ¶ 19, 2012 WL 6727339, at *2 (Ohio Ct. App. [11th Dist.] Dec. 24, 2012) ("If the contractual language does not expressly state the nature of a party's liability it will be presumed that co-signers of the agreement are jointly and severally liable for the underlying debt"). Here, DiAthegen demanded arbitration against all three entities, alleged each had assumed the obligations of the SLA, and sought damages against all of them. The three entities answered jointly and proceeded jointly throughout the arbitration. DiAthegen presented evidence the obligations had been assumed and the Phyton entities' representative at the arbitration testified this was not in dispute. The arbitration panel found all three entities breached the SLA and the award was rendered against all three. As a matter of Ohio law, the three entities were jointly liable for all the damages awarded by the arbitrator. To implement that award, the trial court properly rendered judgment against them jointly and severally.

## CONCLUSION

We hold the trial court erred in concluding the arbitration panel exceeded its authority, and we fully reinstate the award of damages and interest. We further hold the trial court did not err in

failing to make an additional award of attorney's fees or in rendering judgment, jointly and severally, against appellees.

Luz Elena D. Chapa, Justice